NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2075-14T2

JAI SAI RAM, LLC, a limited
liability company of the State
of New Jersey, and SUNIL DHIR,

    Plaintiffs-Appellants,

v.

THE PLANNING/ZONING BOARD OF
THE BOROUGH OF SOUTH TOMS RIVER
and WAWA, INC.,

    Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

July 27, 2016

APPELLATE DIVISION

Argued March 8, 2016 – Decided July 27, 2016

Before Judges Reisner, Hoffman and Leone.

On appeal from the Superior Court of New
Jersey, Law Division, Ocean County, Docket
No. L-1005-14.

Edward F. Liston, Jr., argued the cause for
appellants.

Sebastian Ferrantell argued the cause for
respondent Planning/Zoning Board of South
Toms River (Montenegro, Thompson, Montenegro
& Genz, attorneys; Mr. Ferrantell, of
counsel and on the brief).

Stephen R. Nehmad argued the cause for
respondent Wawa, Inc. (Nehmad Perillo &
Davis, attorneys; Mr. Nehmad and Michael R.
Peacock, on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

Plaintiffs Jai Sai Ram, LLC and Sunil Dhir appeal from a December 3, 2014 order dismissing their complaint in lieu of prerogative writs against defendants, the Planning/Zoning Board of the Borough of South Toms River[1] (Board) and Wawa, Inc. (Wawa). The primary issue presented by this appeal is whether the time of application rule, set forth in N.J.S.A. 40:55D-10.5, applies where, after a use variance application is filed, seeking relief under the existing zoning ordinance, the municipality amends the ordinance to specifically permit the use which is the subject of the application. Construing the statute in light of the purpose for which the Legislature adopted it, we conclude that the rule does not apply in that situation, and the developer is entitled to the benefit of the ordinance as amended.

I

In this case, Wawa applied for a use variance to construct a combined convenience store and gas station on a piece of property that was located partially in a highway development zone and partly in a residential zone. At the time the

---

[1] South Toms River has a combined planning and zoning board. See N.J.S.A. 40:55D-25(c).

application was filed, the proposed use was not permitted in either zone.  It also was not clear whether the Board would consider a combined gas station/convenience store to constitute two principal uses on a single lot, which was also prohibited under the zoning ordinance.

The Wawa site was located in the Pinelands, see N.J.S.A. 13:18A-11, but in a section designated as a Pinelands Regional Growth Area, where commercial development is encouraged "in order to accommodate regional growth influences in an orderly way."  N.J.S.A. 13:18A-9; see also N.J.A.C. 7:50-5.13(g) (defining regional growth areas); N.J.A.C. 7:50-5.28 (providing minimum standards for development in regional growth areas). After Wawa filed its application, the municipal ordinance was amended in 2013 to make the entire area surrounding the project a special economic development (SED) zone, instead of a partly highway commercial and partly residential zone.[2]  However, the

_____

[2] Because the site was located in the Pinelands, and the Pinelands Commission (Commission) had not yet certified the municipal master plan and zoning ordinance as being in compliance with the Pinelands Comprehensive Master Plan (CMP), the Commission's regulations required Wawa to obtain the Commission's preliminary approval (known as a "Certificate of Completeness") before proceeding with its application to the Board.  N.J.A.C. 7:50-4.15; N.J.A.C. 7:50-4.17.  While Wawa's land use application was pending before the Board, the Commission certified the local master plan and zoning, including the creation of the SED zone. Despite the certification, the Board's subsequent resolution approving Wawa's application still
(continued)

SED zone did not specifically provide for a combined gas station/convenience store use, and the 2013 zoning amendment did not change the ordinance's prohibition against siting two principal uses on a single lot.

On January 22, 2014, the Board approved Wawa's application. The approval was memorialized in a fifty-page Resolution dated February 9, 2014.[3]  Notably, in its resolution, the Board found Wawa's expert witnesses credible on all pertinent issues, and found plaintiffs' experts not credible.  The Board determined that the combined gas station/convenience store constituted one principal use of the property.  The Board also approved Wawa's application for preliminary and final major site plan approval and several bulk variances, and granted a use variance for this particular commercial use.  On April 8, 2014, the Executive

_____

(continued)
needed to be reviewed by the Commission's Executive Director to ensure that it conformed to the requirements of the CMP.  See N.J.S.A. 13:18A-10(c); N.J.A.C. 7:50-4.22 (review of final local decision in uncertified municipality); N.J.A.C. 7:50-4.40(a) (review of final local decision in certified municipality).  The Executive Director's final approval letter is known as a "no call up" letter, because it signals that the Board's decision need not be called up for further review by the Commission.  See N.J.A.C. 7:50-4.40(a), -4.40(d).

[3] On April 15, 2014, the Board approved Wawa's application for a minor subdivision of the property.  Plaintiffs did not challenge the April 15, 2014 decision in their complaint in lieu of prerogative writs, which was filed on April 9, 2014.

Director of the Pinelands Commission issued a final approval letter, determining that Wawa's proposed development and the Board's approval were consistent with the Pinelands Comprehensive Master Plan.[4]

Plaintiffs did not appeal to this court from the Commission's decision. However, plaintiffs filed an action in lieu of prerogative writs in the Law Division, challenging the Board's decision. The trial court affirmed the Board's decision, for reasons stated in a thirty-two-page written opinion.

Plaintiffs appealed from the Law Division's final order. While this appeal was pending, the municipality amended its zoning ordinance to specifically designate "single use retail sales & gasoline filling stations operated by a single business entity . . . not part of a planned development" as a permitted principal use in the SED zone. South Toms River, N.J., Ordinance 2-15 (January 30, 2015). The Executive Director of the Pinelands Commission approved that amended ordinance on

---

[4] The Pinelands Commission regulations provide, in pertinent part: "Unless expressly permitted in a certified municipal land use ordinance, no more than one principal use shall be located on one lot." N.J.A.C. 7:50-5.1(c). In approving the Board's resolution on April 8, 2014, before the municipality amended its zoning ordinance to specifically allow combined gas station/convenience stores in the zone, the Commission signaled that it considered a combined gas station/convenience store to be one principal use.

April 16, 2015. See N.J.A.C. 7:50-3.45.

For the reasons set forth below, the applicant is entitled to the benefit of the 2015 amendment and, accordingly, plaintiffs' appeal challenging the use variance is moot.

II

The time of application rule applies to municipal development regulations, and provides as follows:

> Notwithstanding any provision of law to the contrary, those development regulations which are in effect on the date of submission of an application for development shall govern the review of that application for development and any decision made with regard to that application for development. Any provisions of an ordinance, except those relating to health and public safety, that are adopted subsequent to the date of submission of an application for development, shall not be applicable to that application for development.
>
> [N.J.S.A. 40:55D-10.5.]

Prior to its adoption, our courts applied the "time of decision" rule, under which a decision concerning a land use application would be based on the municipal ordinance as it existed at the time the application or appeal was being decided. Maragliano v. Land Use Bd. of Wantage, 403 N.J. Super. 80, 83 (App. Div. 2008), certif. denied, 197 N.J. 476 (2009). The time of decision rule allowed municipalities to block proposed developments by changing the applicable zoning ordinances while

the development applications were being considered. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378-79 (1995).

> Thus, "[i]n the area of land use, a municipality may change its regulating ordinances after an application has been filed and even after a building permit has been issued and, as long as the applicant has not substantially relied upon the issuance of the building permit, it is subject to the amended ordinance."
>
> [Maragliano, supra, 403 N.J. Super. at 83 (citation omitted).]

The clear purpose of N.J.S.A. 40:55D-10.5, adopted as L. 2010, c. 9, § 1, was to assist developers and property owners by obviating the time of decision rule. See Sponsor's Statement to A. 437 (2010) (stating the bill's intent to "override . . . the 'time of decision rule.'"); S. Cmty. & Urban Affairs Comm., Statement to S. 82 (2010). The Legislature was concerned about situations in which a developer would spend time and money pursuing an application, only to have a municipality change the zoning to the developer's detriment while the application was pending. The Sponsor's Statement reflects the statute's purpose:

> Under current law, applicants are subject to changes to municipal ordinances that are made after the application has been filed, and even after a building permit has been issued . . . . Application of this rule sometimes causes inequitable results, such as when an applicant has expended considerable amounts of money for

7

professional services and documentation that become unusable after the ordinance has been amended. While effectively prohibiting municipalities from responding to an application for development by changing the law to frustrate that application, the bill recognizes that ordinance changes necessary for the protection of health and public safety would apply to pending applications.

[Sponsor's Statement to A. 437 (2010).]

The Governor's Message, issued upon signing the bill, likewise explained its goals:

The legislation does not guarantee approval of a land-use application, but instead allows for the application process to move forward without the unnecessary hurdle of constantly changing requirements while the application is pending.

"New Jersey's businesses and entrepreneurs - the job creators of our state - invest considerable amounts of financial and human resources in navigating a vast landscape of rules and regulations at the state and local level," said Governor Christie. "Prior to the signing of this legislation, the system allowed for those rules to be changed in the middle of the process, even after an application has been submitted. This legislation makes common sense changes to improve the application process and move New Jersey in the right direction of providing a friendlier environment for job creation, while keeping safeguards for public health and safety in place."

Currently, regulations do not "lock-in" until preliminary approval is granted for an application, allowing municipalities to change the requirement of an application after its initial submission, resulting in a business that is investing in New Jersey

A-2075-14T2

having to start the costly, time-intensive application process over, or abandoning the project altogether.

[<u>Governor's Message to S. 82</u> (May 5, 2010).]

In construing legislation, our "overriding goal is to give effect to the Legislature's intent." <u>State v. D.A.</u>, 191 <u>N.J.</u> 158, 164 (2007) (citing <u>DiProspero v. Penn</u>, 183 <u>N.J.</u> 477, 492 (2005)). Ordinarily, "the best indicator of that intent is the plain language" of the statute. <u>State v. Gandhi</u>, 201 <u>N.J.</u> 161, 176 (2010) (citation omitted). However, we do not follow that rule when to do so would produce an absurd result, at odds with the clear purpose of the legislation. <u>See</u> <u>Perrelli v. Pastorelle</u>, 206 <u>N.J.</u> 193, 200-01 (2011); <u>Marshall v. Klebanov</u>, 188 <u>N.J.</u> 23, 36-37 (2006).

> [W]e also have stressed that "where a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control." Thus, when a "'literal interpretation of individual statutory terms or provisions'" would lead to results "'inconsistent with the overall purpose of the statute,'" that interpretation should be rejected.
>
> [<u>Hubbard v. Reed</u>, 168 <u>N.J.</u> 387, 392-93 (2001) (citations omitted); <u>see also</u> <u>Sussex Commons Assocs., LLC v. Rutgers</u>, 210 <u>N.J.</u> 531, 540-41 (2012).]

In this case, while the literal terms of the statute could be construed to prevent a favorable land use amendment from

applying to a pending application, that reading would be completely contrary to its purpose. Accordingly, we conclude that the statute does not apply where the local zoning is amended to specifically permit the use which is the subject of a variance application. In that situation, the variance is no longer necessary, and it would be absurd, as well as contrary to the Legislature's purpose, to hold the applicant to the less favorable standards of the pre-existing ordinance.

Likewise, where, as here, there is a pending appeal challenging the grant of the variance, the appeal becomes moot by virtue of the amendment specifically permitting the use. The dispute is moot because, even if we were to decide the appeal in appellants' favor, the applicant could proceed with the project without the variance. See In re Application for a Retail Firearms Dealer's License Renewal, 445 N.J. Super. 80, 97 (App. Div. 2016) (citing Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006)).[5]

Finally, because the appeal is moot for the reasons discussed above, this case does not require us to decide how or whether the Pinelands Preservation Act may affect the implementation of N.J.S.A. 40:55D-10.5 where a Pinelands

---

[5] For completeness, we note that if the appeal were not moot, we would affirm the grant of the use variance for the reasons stated by the trial judge in his comprehensive opinion.

municipality's zoning scheme is uncertified at the time a land use application is filed but is thereafter certified by the Commission after being amended by the municipality.

Here, plaintiffs argue that, once the 2013 zoning amendment was certified by the Commission, the Board was bound to apply the ordinance as amended. As the trial judge noted, in this case, the applicant's evidence at the Board hearing addressed both the uncertified and certified ordinances. The Board's resolution did likewise, although the resolution stated that the Board rendered its decision under the uncertified ordinance, applying the time of application rule. The Pinelands Commission approved the Board's resolution, finding that the approvals granted were consistent with the CMP. As previously noted, plaintiffs have not appealed from the Commission's April 8, 2014 decision.

Further, as the Board's resolution noted, the certified SED zoning ordinance was more favorable to the applicant than the existing uncertified ordinance, and the application would have warranted approval under either enactment. Indeed, plaintiffs have not cited any differences between the uncertified ordinance and the certified ordinance which would have negatively affected Wawa's application. Thus, this case does not present a situation where the certified ordinance is more restrictive than

the previous, uncertified ordinance and, thus, where the time of application rule would make a difference to the Board's decision. Lastly, as previously noted, the use variance issue is now moot by virtue of the municipality's adoption, and the Commission's approval, of the 2015 amended ordinance specifically permitting this use in the zone.

III

Plaintiffs' remaining appellate arguments do not warrant extended discussion. Plaintiffs contend that, as the lessee of the property to be developed, Wawa lacked standing to pursue its entire land use application, despite the landowner's written consent. They also argue that the mayor and two borough council members, all of whom were also Board members, improperly participated in the Board proceedings, although they were statutorily precluded from doing so because the application involved a use variance. See N.J.S.A. 40:55D-25(c)(1). The latter argument is not supported by the record, and we reject both arguments for the reasons stated by the trial judge in his comprehensive opinion.

The judge also properly rejected plaintiffs' argument that the proposed project constituted an "automobile service station" under the local zoning ordinance and therefore required a 1500-foot set-back from nearby churches and schools. Plaintiffs'

12

additional arguments were likewise thoroughly and correctly addressed and rejected in the trial judge's opinion. Those contentions are without sufficient merit to warrant further discussion here. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION