**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4555-15T4

PMG NEW JERSEY II, LLC,

    Plaintiff-Appellant,

v.

82 ISELIN, LLC and ZONING
BOARD OF ADJUSTMENT OF THE
TOWNSHIP OF WOODBRIDGE,

    Defendants-Appellants.

_____

          Argued March 12, 2018 — Decided July 17, 2018

          Before Judges Accurso, O'Connor and Vernoia.

          On appeal from Superior Court of New Jersey,
          Law Division, Middlesex County, Docket No.
          L-4281-15.

          R.S. Gasiorowski argued the cause for
          appellant (Gasiorowski and Holobinko,
          attorneys; R.S. Gasiorowski, on the briefs).

          James M. Turteltaub argued the cause for
          respondent 82 Iselin, LLC (Carlin & Ward,
          PC, attorneys; James M. Turtletaub and Scott
          A. Heiart, of counsel and on the brief).

          Timothy M. Casey argued the cause for
          respondent Zoning Board of Adjustment of the
          Township of Woodbridge (Russo & Casey,
          attorneys; Timothy M. Casey, on the brief).

PER CURIAM

In this prerogative writs action, plaintiff PMG New Jersey II, LLC appeals from a May 23, 2016 order dismissing its complaint and affirming defendant Woodbridge Township's Zoning Board of Adjustment's (Board) resolution granting approval of defendant 82 Iselin, LLC's[1] preliminary and final major site plan to redevelop its property, as well as associated use and bulk variances.  We affirm.

Plaintiff and defendant own adjoining property at the Iselin Service Area, which is just off of the Garden State Parkway (parkway).  Both parties' properties are accessible from only the parkway.  On plaintiff's property is an Exxon gas station with six gas pumps covered by a canopy, and a 2,748 square foot building that houses a mini-mart and a Subway restaurant.

On defendant's property is a Shell gas station with four gas pumps covered with a canopy; there has been a gas station on defendant's property for over sixty years.  There is also a 1,610 square foot vacant building, which was previously used to repair cars.

---

[1]  Although the Board is also a defendant, for simplicity we refer to 82 Iselin, LLC as defendant.

A-4555-15T4

Defendant's application seeks approval for redevelopment of its property by demolishing the existing improvements and putting in a gasoline fueling station with six pumps covered by a canopy, the same size as plaintiff's fueling station. In addition, defendant seeks to replace the empty garage with a 2,450 square foot building, which would house a mini-mart and a Dunkin' Donuts with drive-through capacity. The proposed building is 300 feet smaller than the building plaintiff uses to house its mini-mart and Subway.

At the time of defendant's application, both parties' properties were in the residential zone. The conditional uses permitted in this zone at that time did not include those in which plaintiff and defendant engage on their properties, hence defendant's request for the use variances. After a lengthy public hearing, the Board unanimously voted to approve defendant's application and the variances it requested, although with some conditions, and subsequently issued a twenty-three page resolution explaining its decision.

Plaintiff filed a complaint in lieu of prerogative writs challenging the resolution. After a hearing, Judge Douglas J. Wolfson dismissed the complaint. In his oral opinion, he determined the Board's factual findings were supported by the record and, among other things, found:

3

[T]here were more than adequate special reasons here. Not only is this property particularly suited for this type of . . . commercial use, it had been a gas station for . . . 60 years. It's really the only thing that this use can — that the property can be used for, accessible only to the Parkway and not accessible through the [nearby] residential neighborhood. . . .

I'm satisfied that the property was, therefore, particularly suited for the uses that were proposed and that the evidence was ample in the record which [the Board] could accept. . . .

I'm also satisfied that in conjunction with that . . . the attempt to modernize [defendant's property], upgrade it, make it safer, make it more aesthetically pleasing, enhancing the buffering, putting up the fence, doing all those things, are also positives that weigh into the factor of whether and to the extent special reasons can be established.

And, . . . I'm satisfied that yet another special reason is . . . [the] lack of reasonable adaptability of the property for the purposes for which it is permitted. . . .

With regard to the negative criteria, the testimony is ample and sufficient from the expert planner of the applicant that there was no substantial detriment to the public good, the public at large, or the area. There's adequate buffering. There's the addition of sound [proof] fencing. There is modernization. There is no access to the site from the residential neighborhood. There is virtually zero impact to the residential areas in question. So, the first prong in the negative — negative criteria is not a problem.

4

With regard to the second prong under <u>Medici</u> [<u>v. BPR Co.</u>, 107 N.J. 1, 21 (1987)], the enhanced criteria, I'm satisfied it does not apply under <u>Eagle Group</u> [<u>of Princeton v. Zoning Bd. of Adjustment of Hamilton Tp.</u>, 274 N.J. Super. 551, 564 (App. Div. 1994),] because it would be "jarringly anomalous" to require that kind of reconciliation of an ordinance or master plan which is out of date, out of touch with, and not reasonably adaptable for the purposes for which the property was zoned in the first place.

But even if that were not true, I think it's sufficient[ly] reconcilable, given the fact that the ordinance itself is a mixed ordinance. It isn't purely residential. It's not purely office. And that the master plan does encourage commercial uses on the main — main highways, which the Parkway is.

So I'm satisfied under all those circumstances that the decision of the Board adequately supports — is adequately supported by the record. . . . And I cannot conclude that the decision of the Board, based on all those circumstances and the facts that are accepted as true, which I am required to presume to be valid, was arbitrary, capricious and unreasonable.

Therefore, the decision of the Board is sustained.

In the May 23, 2016 order from which plaintiff appeals, the judge added to some of the above findings, noting:

4. The record had sufficient evidence to support the Board's findings that development of the Subject Property in accordance with the zoning was not reasonably adaptable and would therefore cause a hardship on the Applicant and to

5

> establish the requisite special reasons to approve the application;
>
> 5.  The record had sufficient evidence to support the Board's finding that the Applicant provided sufficient evidence to demonstrate the application satisfied both prongs of the negative criteria to approve the application, even though Medici's enhanced burden was not applicable pursuant to the Eagle Rock case. . . .

On appeal, plaintiff's principal contentions are there was insufficient evidence to support the Board's approval of the "D" variances, see N.J.S.A. 40:55D-70(d), and some of the setback "C" variances, see N.J.S.A. 40:55D-70(c), and that the Board's approval of the application constituted impermissible rezoning.

We have considered all of plaintiff's arguments and determined they are without sufficient merit to warrant discussion in a written opinion, see R. 2:11-3(e)(1)(E), and affirm substantially for reasons set forth in Judge Wolfson's oral opinion and in the May 23, 2016 order.  In addition, we make the following observation.

After the trial court issued its decision, both plaintiff's and defendant's properties were rezoned from R-6 residential to highway business B-3 zone.  Under the applicable ordinance, a B-3 highway business zone is designed "to provide areas for retail sales and services to accommodate the traveling public; . . . and to provide highway-oriented commercial uses in the proper

6

location." WOODBRIDGE TWP., N.J., CODE ch. 150 art. 3, § 150-35(A) (2009). The permitted principal uses in this zone include "drive-through, fast-food and take-out restaurant[s.]" WOODBRIDGE TWP., N.J., CODE ch. 150 art. 3, § 150-35(C)(1) (2009).

Because defendant no longer requires a use variance to construct a Dunkin' Donuts, plaintiff's challenge to the Board's decision to grant a variance for such proposed use is thus moot. See Jai Sai Ram, LLC v. Planning/Zoning Bd. of the Borough of S. Toms River & Wawa, Inc., 446 N.J. Super. 338, 345 (App. Div.), certif. denied, 228 N.J. 69 (2016).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION