NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0556-23

HOBOKEN FOR RESPONSIBLE
CANNABIS, INC., a NEW JERSEY
nonprofit corporation,
and ELIZABETH URTECHO,

      Plaintiffs-Respondents,

v.

CITY OF HOBOKEN PLANNING
BOARD,

      Defendant-Respondent,

and

BLUE VIOLETS, LLC,

      Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **December 30, 2024**
>
> **APPELLATE DIVISION**

      Argued November 13, 2024 – Decided December 30, 2024

      Before Judges Gilson, Firko and Bishop-Thompson.

      On appeal from the Superior Court of New Jersey,
      Law Division, Hudson County, Docket No.
      L-3520-22.

      Michael C. Klauder argued the cause for appellant
      (Cole Schotz PC, attorneys; Michael C. Klauder, of
      counsel and on the briefs).

Daniel L. Steinhagen argued the cause for respondents Hoboken for Responsible Cannabis, Inc. and Elizabeth Urtecho (Beattie Padovano, LLC, attorneys; Daniel L. Steinhagen, of counsel and on the brief).

Richard Brigliadoro argued the cause for respondent City of Hoboken Planning Board (Weiner Law Group LLP, attorneys; Richard Brigliadoro, of counsel and on the brief; Glenn C. Kienz, on the brief).

The opinion of the court was delivered by

FIRKO, J.A.D.

In this complaint in lieu of prerogative writs matter, defendant Blue Violets LLC (Blue Violets) appeals from the September 26, 2023 Law Division order, which vacated a Resolution of Approval (the Resolution) by defendant City of Hoboken Planning Board (the Planning Board). The Resolution of the Planning Board granted Blue Violets's conditional use application to operate an adult "micro" cannabis retail business at 628 Washington Street, an existing mixed-use building, and exempted it from a newly enacted Ordinance B-446 (the Ordinance), restricting any cannabis retailer from being located within 600 feet of a primary or secondary school.

Because Blue Violets submitted its application to the City of Hoboken Cannabis Review Board (CRB) before the Ordinance went into effect, we conclude the Time of Application (TOA) Rule applies. Accordingly, for the reasons that follow, we reverse and reinstate the Resolution. We affirm the

2

trial court's order concluding plaintiff Hoboken for Responsible Cannabis, Inc. (HFRC) has standing as an interested party under the Municipal Land Use Law (MLUL), N.J.S.A 40:55D-1 to -163.

I.

We derive the following facts from the record. On June 17, 2020, Hoboken adopted Ordinance B-267 and created the CRB, "which shall serve as an advisory committee to the City of Hoboken whose duty it shall be to review applications for cannabis wholesale, cannabis retailer, medical cannabis dispensary and cannabis delivery operations based within the City of Hoboken." Further, on August 18, 2021, Hoboken adopted Ordinance B-384, which made the retail sale of cannabis a conditionally permitted use. The ordinance was subsequently codified in Hoboken City Ordinance Section 196-33.1.

The CRB "shall be comprised of seven members, requiring four for a quorum: the Mayor or his or her designee, a City Councilmember to be designated by the Council, the Director of Health and Human Services[,] and four Hoboken residents." Hoboken, N.J. Code § 36-1. Before submitting its forms to the Planning Board, "[a] cannabis retailer, medical cannabis dispensary or cannabis delivery operator located within the [C]ity of Hoboken shall first obtain an endorsement from the Hoboken [CRB]."

3

To obtain approval, an applicant must submit a complete application to the CRB, which includes the following:

(1) [A] [c]ompleted CRB application, checklist and responsive materials submitted online.

(2) Fees: administrative fees and escrow fees remitted to the City of Hoboken. Application [f]ee: $2,500[.00]. Escrow [f]ee: $5,000[.00].

(3) Where the license applicant will be leasing the premises, a signed certification from the property owner/landlord that the owner/landlord is aware that the tenant's use of the premises will involve activities associated with medical, retail, wholesale, delivery, and/or consumption of cannabis.

(4) Proof of legal possession of the proposed premises by virtue of ownership, lease agreement or other arrangement.

(5) A neighborhood impact report. This report should address issues including, but not limited to: anticipated increase in vehicular and pedestrian traffic to and from the site; queuing of customers on the right-of-way; noise; odor; accommodations for delivery services, loading/unloading, and parking; and any provision of public amenities.

(6) An environmental impact plan, which shall, at [a] minimum, include consideration of sustainable alternatives to single-use plastic packaging, efforts to minimize water usage, efforts to minimize light pollution, a refuse and recycling plan, and other 'Green Business' recommendations as set forth by the Hoboken Green Team.

(7) An inventory control plan outlining what process the applicant will use to track and control cannabis

4

product inventories including, for instance: products received from wholesalers and other outside sources, products distributed to other facilities on a wholesale basis, products sold through delivery services or by other means to off-site customers, and products sold to on-site customers.

(8) A copy of the safety and security plan the applicant will be submitting with their [s]tate application.

(9) A statement describing the hiring practices, job creation and diversity plans the applicant proposes to adopt as part of their ongoing operating agreement.

(10) Documentation of license applicant business entity and associates:

> a. Documentation of the formation of the license applicant entity, including, but not limited to, articles of incorporation or organization, charter, bylaws, stock issuance records, operating agreements, partnership agreements, other formation documents filed with the Secretary of State and any other documents that govern the legal and ownership structure of the entity.
>
> b. Copy of a valid New Jersey Business Registration [c]ertificate on file with the Division of Revenue and Enterprise Services and the Department of the Treasury.
>
> c. A list of all persons and/or entities that are owners, passive investors, principals, and managers of the license applicant, that hold at least 10% aggregate ownership interest in the license applicant, including their names, addresses, dates of birth, photo identification, position held, and percentage of ownership.

5

d. Business entities or service contractors that hold at least 10% aggregate ownership of a license applicant shall, in addition to the above, provide a separate list of persons with at least 10% aggregate ownership interest in the entity or services contractor; their names, addresses, dates of birth, photo identification, position held, and percentage of ownership in the business entity or services contracting entity.

e. A list of persons that are owners and principals of the license applicant who have resided in Hoboken for at least two years as of the date of the application, and documentation of such residency.

f. License applicant and cannabis business entity organizational chart identifying ownership, control, and operational structure, including owners, principals, management services contractors, managers, as well as parent companies, subsidiaries, affiliates, predecessors, and successors of the license applicant.

g. W-9 for person or entity supplying escrow fees.

h. Certification of non-profit status, if applicable.

(11) For the license applicant and each of its parent companies, subsidiaries, affiliates, predecessors, or successors:

a. A list of any previous violations of or [judgment], order, consent decree, consent order, sanction, or penalty pertaining to any state or federal statute, regulation or code; and

6

b. A list of all pending litigation or past litigation that concluded in the last five years, whether in this [S]tate or in another jurisdiction, in which the applicant or entity was involved.

. . . .

(16) Business Plan - same plan as submitted with [s]tate application.

(17) Compliance Plan - same plan as submitted with [s]tate application.

(18) Vendor-Contract Agreements - same as submitted with [s]tate application.

(19) Any and all other information necessary to satisfy the requirements set forth in the [m]unicipal [c]ode of the City of Hoboken.

On January 22, 2022, Blue Violets attempted to submit an application to the CRB but was informed that it would be deemed incomplete without a signed lease. On February 18, 2022, Blue Violets signed a lease agreement for 628 Washington Street and submitted the final requisite documents to the CRB. That same day, Blue Violets's application was deemed "completed" by the CRB. Ten days later, on February 28, 2022, Blue Violets was advised by the CRB secretary that its application was listed on the March 24, 2022, CRB meeting agenda. Blue Violets was instructed to provide ten days' notice of the CRB meeting to all properties situated within 200 feet of its property.

On March 9, 2022, the Ordinance was introduced to amend "Section 196-33.1(I) of the City of Hoboken [z]oning [o]rdinance to provide . . . that no cannabis retailer 'shall . . . be located within 600 feet in all directions of any primary or secondary school. . . .'" The Ordinance further limited the number of cannabis retailers—whether for adult use or medicinal use—to six. On March 10 and 11, 2022, Blue Violets mailed notices—as directed—to eighty-nine different addresses located within 200 feet of its proposed location in anticipation of the March 24, 2022 CRB meeting.

Blue Violets attended the CRB meeting on March 24, 2022, but review of its application was postponed until the next meeting, scheduled for April 21, 2022, because the meeting ran over time. On April 21, 2022, Blue Violets attended the CRB meeting, and its application was endorsed by the CRB.

Meanwhile, on April 6, 2022, the City Council voted to adopt the Ordinance. On April 28, 2022, the Ordinance went into effect after being signed into law by Mayor Ravinder Bhalla.

The next day, April 29, 2022, Blue Violets submitted its signed application to the Planning Board, the day after the Ordinance took effect. On May 10, 2022, the Planning Board subdivision and site plan committee (the subcommittee) met and deemed Blue Violets's conditional use application incomplete because it did not include a completed construction disclosure

form, flood plain administration letter or certification, an executed community host agreement, a certificate of real estate taxes, lighting plan, or signage information.

On June 14, 2022, the subcommittee again deemed Blue Violets's conditional use application incomplete, despite Blue Violets submitting additional documents. However, on July 7, 2022, after Blue Violets submitted all the required documents, the subcommittee concluded Blue Violets's conditional use application was complete and scheduled its application for a public hearing.

On September 15, 2022, the Planning Board conducted a public hearing regarding Blue Violets's conditional use application. At the public hearing, Blue Violets, represented by counsel, presented testimony of its principal and a professional planner. The public, including Urtecho, spoke during the public comment portion of the hearing. Urtecho stated,

> I would like the record to reflect that I am an objector to the Blue Violets['s] application and I am putting this [Planning] Board on notice that I [am] seeking legal advice to challenge the Planning Board's decision to move forward the Blue Violets['s] application despite the dispensary's violation of the [the Ordinance] that went into effect on April 28th.
>
> On June 14th, 2022, Tiffanie Fisher, Jen Giattino, and I submitted a letter to the Planning Board and the secretary and attorney arguing that the

Blue Violets['s] application would violate Hoboken's [Ordinance] that went into effect on April 28th.

Specifically, [it] would violate [S]ection 196-33.1 of this [O]rdinance, which states a dispensary cannot be located within 600 feet in all directions of any primary or secondary school.

Blue Violets'[s] proposed location at [the Property] is just over 200 feet away from both Hoboken Charter and All Saints Episcopal Day School.

Blue Violets submitted an incomplete application on April 29th, a day after the law[] went into effect.

Our position is that New Jersey's [TOA Rule], as interpreted by the New Jersey Supreme Court in the ruling of [Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546 (2018)] . . . concludes that Blue Violets'[s] application was not only submitted . . . too late, it was an incomplete application and not deemed to be complete by this Planning Board until July, two-and-a-half months after the laws went into effect.

. . . .

Our argument: The [CRB] is an advisory board and has no legal authority. Mayor Bhalla confirms this argument . . . on April 25th when he responded to a concerned resident's question regarding . . . Blue Violets['s] application.

I would like to submit the e-mail for the record. Quoting from the e-mail, Mayor Bhalla states:

Please also be advised that the local [CRB] is a local advisory board with no legal

10

authority to approve or deny any given application. [The CRB] can just vote to provide a report recommending or not recommending the application move further in the process and state the reasons why.

Ultimately, the dispensaries will require support from my office, the City Council, and the Planning Board, all of which are binding requirements.

In essence, Mayor Bhalla's e-mail clarifies that the [CRB] prescreens applications before they are legally decided upon by the Planning Board, City Council, and Mayor.

Given the [CRB] has no legal authority per Mayor Bhalla, it cannot benefit from the [TOA Rule], and if the [CRB] misrepresented its legal authority to the Blue Violets dispensary, it is an issue that Blue Violets can take up with them.

The . . . Planning Board applies the [TOA Rule] . . . to applications that it has jurisdiction over. It has no jurisdiction over the [CRB], which has entirely separate, less binding, and less robust application and review requirements.

Therefore, Blue Violets submitted its incomplete MLUL application to the . . . Planning Board one day after Hoboken's new cannabis laws went into effect and is in violation of [the Ordinance], which states no dispensary can be located within 600 feet in all directions at any primary or secondary school.

Blue Violets's attorney argued the TOA Rule applied to its application.

On September 15, 2022, over objection from Urtecho and others, the Planning

A-0556-23

Board unanimously voted to approve Blue Violets's conditional use application. The Planning Board's attorney addressed the TOA Rule:

> So any applicant, just so everyone here understands, any applicant is entitled to the benefit of the law as it stands at the time that they submit the application to the [C]ity. . . . [T]here was no school requirement at the time . . . the application was submitted and accordingly it does not apply to this application.

On October 13, 2022, the Planning Board adopted the "Resolution of Approval - Application of Blue Violets LLC - Approval of Conditional Use." In the Resolution, the Planning Board stated,

> Notably, a condition placed upon retail cannabis use is that cannabis dispensaries may not be located within 600 feet of a primary or secondary school. However, the [Planning] Board finds that [Blue Violets] began its approval process by applying to the [CRB] prior to the adoption and applicability of that [O]rdinance. Accordingly, [Blue Violets] is entitled to application of the [O]rdinance as it existed at the commencement of its approval process, and this proximity requirement does not apply to the subject [a]pplication.
>
> . . . .
>
> NOW, THEREFORE, BE IT RESOLVED, by the Planning Board of the City of Hoboken, County of Hudson and State of New Jersey, on the 15th day of September, 2022 . . . the [a]pplication of Blue Violets LLC is hereby APPROVED . . . .

On October 5, 2022, HFRC was incorporated. On October 21, 2022, HFRC filed a complaint in lieu of prerogative writs challenging the Planning Board's decision. As stated in its complaint,

> Plaintiff [HFRC] . . . is a non-profit corporation formed by residents and taxpayers of the City of Hoboken, including its registered agent . . . Urtecho, who participated in the proceedings below, who are concerned about the manner in which the City of Hoboken and its subordinate agencies and boards is implementing the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, [N.J.S.A. 24:6I-31 to -56] . . . its land use ordinances adopted pursuant to the [MLUL]. . . .

At the hearing before the trial court, HFRC argued, in part, that Blue Violets's submissions to the CRB were not an application for development as defined by the MLUL and the TOA Rule was not triggered. HFRC contended that even if approval of the CRB is required prior to filing an application for development with the Planning Board, it is only a submission requirement, and not part of an application for development.

HFRC further asserted that Blue Violets's application for development was not submitted prior to the April 28, 2022 effective date of the Ordinance, and was not considered "complete" at the time of its submission the next day, or thereafter on May 10 or June 14, 2022. HFRC argued Blue Violets's application violated the Ordinance because its location falls within 600 feet of

two primary schools, and the Planning Board lacked jurisdiction to consider the application. HFRC sought to declare the Planning Board's decision was arbitrary, capricious, and unreasonable, and to invalidate its Resolution issued to Blue Violets.

In addition, HFRC contended that at the public hearing, the Planning Board prevented members of the public from cross-examining Blue Violets's witnesses about the Planning Board's jurisdiction and proximity of the proposed location to nearby schools. Counsel for Blue Violets challenged HFRC's standing under the MLUL to invalidate the Resolution. The trial court reserved decision. Urtecho then moved to intervene.

On September 22, 2023, the trial court granted Urtecho's motion to intervene. That same day, HFRC and Urtecho filed an amended complaint in lieu of prerogative writs, alleging Urtecho is a resident and taxpayer of the City of Hoboken and is the president of HFRC. The amended complaint otherwise pled the same facts and sought the same relief as the original complaint.

In a September 26, 2023 oral decision, the trial court vacated the Planning Board's Resolution issued to Blue Violets. The trial court concluded that the CRB "was not acting as a [P]lanning [B]oard under the [O]rdinance." The trial court determined that the submission of an application to the CRB "is

not an application for development under the MLUL . . . because the [CRB] does not give approval for conditional use variances in subdivision plot[s], site plan, planned development, cluster development, [or] zoning variance for direction of the issuance of a permit."

In addressing the TOA Rule, the trial court found that the Planning Board "did not consider the CRB application to be a complete application" and thus, "[t]he facts right there destroyed Blue Violets'[s] . . . and [the] Planning Board's arguments that the Planning Board application was complete when . . . [Blue Violets] filed its CRB application on February 18, 2022." A memorializing order was entered.

This appeal followed. Blue Violets moved for a stay pending appeal under Rule 2:9-5, which the trial court denied. Blue Violets then moved for a stay pending appeal before this court, which we granted. Blue Violets has been and is currently operating its micro cannabis store.

Blue Violets reprises its arguments made before the trial court and presents the following arguments for our consideration:

> (1) the trial court erred in concluding that HFRC and Urtecho have standing under the MLUL;
>
> (2) the trial court erred in concluding that Blue Violets's submission of a complete application to the CRB did not trigger the TOA;

(3) the trial court's decision to vacate the Resolution undermines the clear purpose of the TOA; and

(4) the trial court erred in granting Urtecho's "eleventh hour" motion to intervene and by enlarging the statute of limitations applicable to her otherwise time-barred claims.

Defendant Planning Board argues that the trial court erred in finding the Planning Board did not have the protection of the TOA Rule against subsequent zoning changes and in not concluding the CRB is an integral part of the Planning Board process.

## II.

"When reviewing a trial court's decision regarding the validity of a local [B]oard's determination, 'we are bound by the same standards as . . . the trial court.'" Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "We have long recognized that [Z]oning [B]oards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (alteration in original) (quoting Kramer v. Board of Adjustment, 45 N.J. 268, 296 (1965)).

16

However, we review de novo a Board's conclusions of law. Wyzykowski v. Rizas, 132 N.J. 509, 518 (1993). Thus, we exercise plenary review of a Board's interpretation of the MLUL. See Russo v. Board of Trs., PFRS, 206 N.J. 14, 27 (2011) (stating a court is "in no way bound by an agency's interpretation of a statute") (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 (1973)); Motley v. Borough of Seaside Park Zoning Bd. of Adjustment, 430 N.J. Super. 132, 146 (App. Div. 2013) (reviewing de novo Board of Adjustment's interpretation of MLUL).

We give deference to the actions and factual findings of local Boards. Jacoby, 442 N.J. Super. at 462. "A [B]oard's decision 'is presumptively valid, and is reversible only if arbitrary, capricious, and unreasonable.'" Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998) (quoting Sica v. Board of Adjustment, 127 N.J. 152, 166-67 (1992)); see also Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013).

"We do not review the wisdom of [a Planning Board's] decision, rather . . . we merely 'determine whether the [B]oard could reasonably have reached its decision.'" Pullen v. Township of S. Plainfield Plan. Bd., 291 N.J. Super. 1, 6-7 (App. Div. 1996) (quoting Davis Enters. v. Karpf, 105 N.J. 476, 485 (1987)). "Accordingly, we will not disturb a [B]oard's decision unless we find

17

a clear abuse of discretion." <u>Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment</u>, 172 N.J. 75, 82 (2002).

## A.  <u>Standing</u>

Blue Violets first argues the trial court erred because HFRC lacked standing under the MLUL to challenge the approval granted by the Planning Board.  We disagree.

Standing is a threshold issue, which "neither depends on nor determines the merits of a plaintiff's claim."  <u>Edison Bd. of Educ. v. Zoning Bd. of Adjustment of Edison</u>, 464 N.J. Super. 298, 305 (App. Div. 2020) (quoting <u>Watkins v. Resorts Int'l Hotel & Casino</u>, 124 N.J. 398, 417 (1991)).  Courts may not entertain proceedings by plaintiffs who:  (1) "do not have sufficient legal standing to maintain their actions"; or (2) "are 'mere intermeddlers,' or are merely interlopers or strangers to the dispute."  <u>Cherokee LCP Land, LLC v. City of Linden Plan. Bd.</u>, 234 N.J. 403, 423 (2018) (Timpone, J., dissenting) (first quoting <u>Al Walker, Inc. v. Borough of Stanhope</u>, 23 N.J. 657, 660 (1957); and then quoting <u>Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y.</u>, 58 N.J. 98, 107 (1971)).

"[S]tanding must be considered on a case-by-case basis."  <u>Edison Bd. of Educ.</u>, 464 N.J. Super. at 306 (quoting <u>Cherokee LCP Land</u>, 234 N.J. at 418). A party has standing only if the party "demonstrates 'a sufficient stake and real

A-0556-23

adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm . . . in the event of an unfavorable decision.'" Id. at 305-06 (alterations in original) (quoting Cherokee LCP Land, 234 N.J. at 423).

"[T]he MLUL contains specific requirements for standing, both before the land use [B]oard and before the court." Id. at 306; see also Cox et al., New Jersey Zoning & Land Use Administration, § 40-4.1 (2024) (noting generally "standing to appeal decisions taken at a municipal level [to be] consistent with standing to appear before those bodies or officers"). The MLUL recognizes "development on one parcel of land can have consequences for others" and, as such, provides, in relevant part, an "interested party may appeal to the governing body any final decision of a [B]oard of [A]djustment approving an application for development." Cherokee LCP Land, 234 N.J. at 407, 416 (emphasis added) (quoting N.J.S.A. 40:55D-17(a)). The MLUL defines an "interested party" as:

> any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under [this act], or whose rights to use, acquire, or enjoy property under [this act], or under any other law of this State or of the United States have been denied, violated or infringed by an action or a failure to act under [this act].

A-0556-23

[Id. at 416 (alterations in original) (quoting N.J.S.A. 40:55D-4).]

As such, our Supreme Court has held although a reviewing court must take "a liberal approach to standing in zoning cases and . . . broadly construe[] the MLUL's definition of 'interested party,'" standing still requires a party to establish both:  (1) a "right to use, acquire, or enjoy property"; and (2) "that right 'is or may be affected.'"  Id. at 416-17 (first quoting DePetro v. Township of Wayne Plan. Bd., 367 N.J. Super. 161, 172 (App. Div. 2004); and then quoting N.J.S.A. 40:55D-4).  The MLUL's definition of an "interested party" "should be understood in the context of the MLUL generally," and, as such, a party's right of "use, enjoyment or right to acquire should always be evaluated in terms of the purpose of the MLUL."  Edison Bd. of Educ., 464 N.J. Super. at 306 (quoting Cox et al., § 18-2.2).

Here, we are satisfied both HFRC and Urtecho had standing as "interested parties."  HFRC is composed of residents of Hoboken, including Urtecho, who appealed the Planning Board's final decision "approving an application for development," see Cherokee LCP Land, 234 N.J. at 407, 416 (quoting N.J.S.A. 40:55D-17(a)).  Moreover, HFRC and Urtecho inherently have standing to challenge the Planning Board's "Approval of Conditional Use," which may impact HFRC's and Urtecho's rights of use and enjoyment of their properties by virtue of the potential impact on Hoboken's zoning plan or

20

A-0556-23

the community welfare.  See Edison Bd. of Educ., 464 N.J. Super. at 306; Booth v. Board of Adjustment of Rockaway Twp., 50 N.J. 302, 305 (1967); see also Cherokee LCP Land, 234 N.J. at 407 (recognizing the "development on one parcel of land can have consequences for others"); DePetro, 367 N.J. Super. at 171 (noting a substantial "interest exists in the preservation of the integrity of a zoning ordinance").

Therefore, in light of this analysis, the trial court did not err in concluding that HFRC had standing as an interested party under the MLUL.

## B.  TOA Rule

Next, we address Blue Violets's argument that the trial court erred in concluding Blue Violets's application to the CRB did not trigger the TOA. Planning Boards are subject to the TOA Rule.  Dunbar, 233 N.J. at 560.  The TOA Rule provides:

> Notwithstanding any provision of law to the contrary, those development regulations which are in effect on the date of submission of an application for development shall govern the review of that application for development and any decision made with regard to that application for development.  Any provisions of an ordinance, except those relating to health and public safety, that are adopted subsequent to the date of submission of an application for development, shall not be applicable to that application for development.
>
> [N.J.S.A. 40:55D-10.5.]

The TOA Rule applies only when there is a complete application for development. Dunbar, 233 N.J. at 556. "An application for development is complete for purposes of commencing the applicable time period for action by a municipal agency, when so certified by the municipal agency or its authorized committee or designee." N.J.S.A. 40:55D-10.3. A municipal agency has forty-five days to act on the application and if no action is taken, the application shall be deemed complete. Ibid. "[I]n the event information required by local ordinance is not pertinent, the applicant may request a waiver as to that information or those documents it finds extraneous." Dunbar, 233 N.J. at 562-63.

> The applicant's submission will provisionally trigger the TOA Rule if a waiver request for one or more items accompanies all other required materials; if the Board grants the waiver, then the application will be deemed complete. If the Board denies the waiver, its decision will be subject to review under the customary "arbitrary and capricious or unreasonable" standard.
>
> [Dunbar, 233 N.J. at 563 (quoting Grabowsky v. Township of Montclair, 221 N.J. 536, 551 (2015)).]

The MLUL also addresses conditional approvals:

> In the event that development proposed by an application for development requires an approval by a governmental agency other than the municipal agency, the municipal agency shall, in appropriate instances, condition its approval upon the subsequent approval of such governmental agency; provided that the municipality shall make a decision on any application

for development within the time period provided in this act or within an extension of such period as has been agreed to by the applicant unless the municipal agency is prevented or relieved from so acting by the operation of law.

[N.J.S.A. 40:55D-22(b).]

In Jai Sai Ram, LLC v. Planning/Zoning Bd., 446 N.J. Super. 338 (App. Div. 2016), we explained that the reason the TOA Rule was implemented was because, previously, the "time of decision rule" had "allowed municipalities to block proposed developments by changing the applicable zoning ordinances while the development applications were being considered." Id. at 343. Thus, the Legislature sought to stop the practice that permitted municipalities to change zoning ordinances as a means of rejecting development applications, because the changed ordinance would no longer be applicable to the already submitted application. Ibid.

The Dunbar Court stated the following:

The TOA Rule, which took effect in May 2011 . . . replaced the former "time of decision rule." See A. Housing & Local Gov't Comm. Statement to A. 437 (2010). The time of decision rule required that [Z]oning [B]oards and reviewing courts "apply the statute in effect at the time of the [land-use application] decision." Pizzo Mantin Grp. v. Township of Randolph, 137 N.J. 216, 235 (1994). The time of decision rule allowed municipalities to "change . . . land-use ordinances after an application ha[d] been filed, even 'in direct response to the application.'" Ibid. (quoting Burcam Corp. v. Planning Bd. of

23

Medford, 168 N.J. Super. 508, 512 (App. Div. 1979)). The Legislature acknowledged that the time of decision rule had produced "inequitable results, such as when an applicant has expended considerable amounts of money for professional services and documentation that becomes unusable after [an] ordinance has been amended." A. Housing & Local Gov't Comm. Statement to A. 437 (2010) . . . .

. . . .

The terms used in the TOA Rule are to be construed in accordance with any definitions set forth in the MLUL. See Norman J. Singer & J.D. Shambie Singer, 1A Sutherland Statutory Construction § 20:8 (7th ed. 2008) ("The definition of a term in the definitional section of a statute controls the construction of that term wherever it appears throughout the statute."). Thus, the term "application for development" must be interpreted to mean "the application form and all accompanying documents required by ordinance for approval of a subdivision plat, site plan, planned development, cluster development, conditional use, zoning variance or direction of the issuance of a permit." N.J.S.A. 40:55D-3 (emphasis added).

Determinations as to the precise contents of an "application for development" are thus left to municipalities, in accordance with the Legislature's general exercise of its "constitutional authority to delegate to municipalities the 'police power' to enact ordinances governing" land use "through the passage of the [MLUL]." 388 Route 22 Readington Realty Holdings, LLC v. Township of Readington, 221 N.J. 318, 338 (2015). Significantly, "[b]ecause the planning and zoning power stems from legislative allowance, it must be exercised in strict conformity with the delegating enactment—the MLUL." Nuckel

24

v. Borough of Little Ferry Plan. Bd., 208 N.J. 95, 101 (2011).

[Dunbar, 233 N.J. at 560-61.]

We noted the TOA Rule's legislative history in Jai Sai Ram, LLC,

> Prior to its adoption, our courts applied the "time of decision" rule, under which a decision concerning a land use application would be based on the municipal ordinance as it existed at the time the application or appeal was being decided. Maragliano v. Land Use Bd. of Wantage, 403 N.J. Super. 80, 83 (App. Div. 2008). The time of decision rule allowed municipalities to block proposed developments by changing the applicable zoning ordinances while the development applications were being considered. See Manalapan Realty, L.P. v. Township Comm. of Manalapan, 140 N.J. 366, 378-79 (1995).
>
> > Thus, "[i]n the area of land use, a municipality may change its regulating ordinances after an application has been filed and even after a building permit has been issued and, as long as the applicant has not substantially relied upon the issuance of the building permit, it is subject to the amended ordinance."
> >
> > [Maragliano, 403 N.J. Super. at 83 (citation omitted).]
>
> The clear purpose of N.J.S.A. 40:55D-10.5 . . . was to assist developers and property owners by obviating the time of decision rule. See Sponsor's Statement to A. 437 (2010) (stating the bill's intent to "override . . . the 'time of decision rule.'"); S. Cmty. & Urban Affairs Comm. Statement to S. 82 (2010). The Legislature was concerned about situations in which a developer would spend time and money pursuing an application, only to have a municipality change the zoning to the

25

developer's detriment while the application was pending. The Sponsor's Statement reflects the statute's purpose:

> Under current law, applicants are subject to changes to municipal ordinances that are made after the application has been filed, and even after a building permit has been issued. . . . Application of this rule sometimes causes inequitable results, such as when an applicant has expended considerable amounts of money for professional services and documentation that become unusable after the ordinance has been amended. While effectively prohibiting municipalities from responding to an application for development by changing the law to frustrate that application, the bill recognizes that ordinance changes necessary for the protection of health and public safety would apply to pending applications.
>
> [Sponsor's Statement to A. 437 (2010).]

The Governor's Message, issued upon signing the bill, likewise explained its goals:

> The legislation does not guarantee approval of a land-use application, but instead allows for the application process to move forward without the unnecessary hurdle of constantly changing requirements while the application is pending.
>
> "New Jersey's businesses and entrepreneurs— the job creators of our [S]tate—invest considerable amounts of financial and human resources in navigating a vast landscape of rules and regulations at the state and local level," said Governor Christie. "Prior to the signing of this legislation, the system allowed for those rules to be changed in the middle of the process, even

after an application has been submitted.  This legislation makes common sense changes to improve the application process and move New Jersey in the right direction of providing a friendlier environment for job creation, while keeping safeguards for public health and safety in place."

Currently, regulations do not "lock-in" until preliminary approval is granted for an application, allowing municipalities to change the requirement of an application after its initial submission, resulting in a business that is investing in New Jersey having to start the costly, time-intensive application process over, or abandoning the project altogether.

[Jai Sai Ram, LLC, 446 N.J. Super. at 343-45 (quoting Governor's Message to S. 82 (2010)).]

Jai Sam Ram, LLC contemplated the exact scenario that is presented in the matter under review.  We held the TOA Rule was created because, "[t]he Legislature was concerned about situations in which a developer would spend time and money pursuing an application, only to have a municipality change the zoning to the developer's detriment while the application was pending."  Id. at 344.  To avoid an "absurd result" in this matter, we must follow "the spirit of the law."  Id. at 345.

Applying these principles to the matter before us, we conclude the trial court erred in holding the TOA Rule did not apply to Blue Violets's application to the CRB.  The Hoboken Code states,

> The [CRB] shall receive and review all applications for cannabis wholesaler, cannabis retailer, medical cannabis dispensary and Hoboken-based cannabis delivery and shall provide an endorsement, or report to the contrary, to the [L]and [U]se [B]oard of jurisdiction prior to the applicant's submission of a conditional use application to the [Planning] [B]oard.
>
> [Hoboken, N.J., Code § 36-4(A).]

Therefore, the protection afforded by N.J.S.A. 40:55D-10.5 was triggered when Blue Violets made its submission to the CRB. The submission to the CRB was an "application for development," as defined by N.J.S.A. 40:55D-10.5. Thus, the TOA Rule applies. HFRC's challenge to the Planning Board's Resolution is thus moot. See Jai Sai Ram, LLC, 446 N.J. Super. at 345.

The record amply supports the Planning Board's decision to grant the Resolution to Blue Violets. The CRB was created by Hoboken as a separate arm of the Planning Board. In that regard, the CRB had the responsibility to review cannabis site plan applications for land use compliance. The application process to obtain CRB approval was costly and time-consuming. Indeed, Blue Violets contends it spent $69,375.00 to complete the CRB application and seek final site plan approval.

The CRB is a "municipal agency" as defined in N.J.S.A. 40:55D-10.3, with the goal "to assure the public health, safety, and general welfare of . . . Hoboken and its residents, business establishments and visitors." We conclude

the CRB falls within the definition of the MLUL as a "municipal agency," serving as an "arm" to the Planning Board by reviewing cannabis-related applications and holding hearings.

The record establishes that the CRB reviewed Blue Violets's application and deemed it complete as of February 2022, which triggered the TOA Rule. The Ordinance did not go into effect until approximately two months later, on April 28, 2022. Therefore, the Planning Board correctly determined that Blue Violets's application was not subject to the Ordinance. Thus, we hold the trial court erred in vacating the Resolution, warranting reversal.

In sum, we: (1) affirm the trial court's order concluding HFRC has standing as an interested party under the MLUL; and (2) reverse the trial court's order vacating the Resolution because Blue Violets's submission of a completed application to the CRB triggered the TOA Rule. In light of our conclusion, we need not address Blue Violets's contentions that the trial court erred in granting Urtecho's motion to intervene and enlarged the statute of limitations applicable to her claims.

Affirmed in part, reversed and vacated in part. The stay entered by this court is dissolved. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0556-23