JUSTICE SOLOMON delivered the opinion of the Court.
**407 *599 The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-17(a), recognizes that development on one parcel of land can have consequences for others. The MLUL thus provides that "[a]ny interested party may appeal to the governing body any final decision of a board of adjustment approving an application for development," N.J.S.A. 40:55D-17(a), and defines "interested party" broadly to include "any person ... whose right to use, acquire, or enjoy property is or may be affected by any action taken under [the MLUL]," N.J.S.A. 40:55D-4.
This appeal tests the limits of that definition as applied to the holder of a tax sale certificate -- a tax lienholder -- under New Jersey's Tax Sale Law (Tax Sale Law), N.J.S.A. 54:5-1 to -137. Specifically, we consider whether a tax lienholder has standing to challenge a planning board's approval of a land use application for a neighboring property.
We conclude that, pursuant to N.J.S.A. 40:55D-4, a tax lienholder who can show that its "right to use, acquire or enjoy property is or may be affected" if the application is granted is an interested party and therefore may have standing to challenge a planning board's approval of a land use application.
Accordingly, we reverse the judgment of the Appellate Division affirming the trial court's dismissal with prejudice of plaintiffs' complaint in lieu of prerogative writs pursuant to Rule 4:6-2(e), and remand for further proceedings. The record is deficient with respect to a number of factual issues, as noted throughout the opinion; to the extent that those matters are pertinent to standing or the substantive merits of this case, they should be considered and a record developed on remand.
**408 I.
A.
We glean the following relevant facts from the motion proceedings before the trial court.
A predecessor of GAF Corporation (GAF) acquired and subsequently subdivided a property in Linden, New Jersey, into two parcels of land. GAF retained ownership of one parcel, now known as Block 587, Lots 1 and 2.01, on Linden's official tax map (the Property), and sold the other, now known as Block 587, Lots 3.01, 3.02, and 3.03, on the Linden tax map (the Neighboring Property) to Linden Chlorine Products, Inc.
GAF transferred the Property to Linden Property Holdings, LLC (LPH), which entered into a purchase and sale agreement with Goodman North American Partnership Holdings, LLC (Goodman). The purchase and sale agreement was contingent upon Goodman procuring approval to undertake redevelopment projects on the Property.
In 2013, after several transfers, bankruptcy proceedings, and abandonment, *600 ownership of the Neighboring Property, a superfund site, was purportedly transferred by quitclaim deed to Cherokee LCP Land, LLC (Cherokee), a plaintiff in this matter. That same year, non-party Cherokee Equities, LLC (Equities), purchased three tax sale certificates on the Neighboring Property from the City of Linden and initiated tax foreclosure proceedings. After filing the foreclosure complaint, Equities assigned the tax sale certificates to Linden 587, LLC (Linden 587), and Linden 587 was substituted as plaintiff in the foreclosure proceedings.[1] According **409 to the record, those proceedings are still pending.[2]
In May 2014, Goodman submitted a site plan application for development of industrial, warehouse and distribution space on the Property to the City of Linden Planning Board (the Board). Following the submission of those plans, Goodman served notice of its application to interested parties and property owners within 200 feet of the Property, as identified by the City of Linden, including Cherokee.
Seventeen days before Equities assigned the tax sale certificates to Linden 587, the Board held a public hearing on Goodman's application. Cherokee attended the hearing as an objector,[3] based on its status as owner of the Neighboring Property. Neither Equities nor Linden 587 attended the hearing.
In part, Cherokee challenged the proposed project's elimination of certain points of access to the Neighboring Property, its interference with an existing easement on the Property, and substantial modifications to storm water management on the Property. Counsel for Cherokee cross-examined Goodman's witnesses and presented its engineer as a witness.
Following the hearing, the Board unanimously approved the application with qualifications.[4] Thereafter, Cherokee's principal, Jay Wolfkind, emailed Goodman offering to sell the Neighboring Property to Goodman as a means of avoiding litigation in exchange **410 for "just TWO (2%) PERCENT of the project."[5] The bottom of Wolfkind's email states, "[Cherokee] and Linden 587 ... are separate legal entities from each other, and from every other Cherokee entity."[6] *601 In October 2014, plaintiffs Cherokee and Linden 587 filed a complaint in lieu of prerogative writs with the Chancery Division of the Superior Court, challenging the Board's approval of Goodman's application. The complaint named Goodman, LPH, and the Board as defendants. In response, defendants Goodman and LPH filed motions to dismiss plaintiffs' complaint or, alternatively, for summary judgment, and submitted a statement of material facts in support of their motion. They argued, in part, that Cherokee and Linden 587 lacked standing. The Board joined in those motions.
Following oral argument, the trial court noted that plaintiffs "either admitted or failed to substantively respond" to defendants' statement of material facts. The trial court thus considered the facts to be uncontested for the purposes of ruling on the motion to dismiss. The trial court granted the motion pursuant to Rule 4:6-2(e) and dismissed plaintiffs' complaint with prejudice.
In its Statement of Reasons, the court stated that both Cherokee and Linden 587 lacked standing to challenge the Board's approval. Based on that finding, the court did "not [need to] reach the merits of the summary judgment motion." In determining that Linden 587 lacked standing, the court noted that neither "Linden 587's affiliated status with Cherokee" nor its "status as a holder of three liens on the Neighboring Property" conferred standing.
**411 In discussing Linden 587's affiliated status with Cherokee, the court noted that "plaintiffs have not provided any information to this court showing the nature of the relationship between the entities," adding that, as noted at the bottom of Wolfkind's email offering to sell the Neighboring Property to Goodman, the "record ... suggests that the plaintiffs are separate legal entities." The court stated that "the injury of one separate legal corporate entity cannot be imputed to another" and reasoned that, even if imputation was permissible, it would not be appropriate because "Cherokee does not have an interest in the Neighboring Property."[7]
The court concluded that "Linden 587 does not have a present interest in the Neighboring Property as its ownership rights, which include the use and enjoyment of the property, are conditioned upon its right of redemption which it has failed to exercise." Citing Township of Jefferson v. Block 447A, Lot 10, 228 N.J. Super. 1, 4, 548 A.2d 521 (App. Div. 1988), the trial court found "that until redemption and entry of foreclosure, the holder of a tax sale certificate does not have any vested ownership or present possessory interest in a property that is subject to the tax sale certificate." As a result, the trial court determined that Linden 587 "cannot be deemed an interested party" based on its status as a tax lienholder and that, as a consequence, dismissal was warranted.
Additionally, the court noted that the plaintiffs' motive was not to redevelop the Neighboring Property, but to "extract value from the Project through the sale of the Neighboring Property ... to Goodman."
Plaintiffs appealed. The Appellate Division "affirm[ed] the dismissal of plaintiffs' complaint" and did "not reach the merits of the challenge to the Board's approval." In affirming the Chancery **412 Division's determination, the panel found that Linden *602 587 lacked standing because "Linden 587 [did not] appear[ ] before the Board nor file[ ] any objection with the Board."[8] The appellate panel also determined that Linden 587 had not foreclosed upon the Neighboring Property or redeemed the tax sale certificates before filing its complaint in lieu of prerogative writs. Hence, the panel concluded that "Linden 587 did not have an existing property interest in the Neighboring Property." The panel noted that "the holder of a tax sale certificate is not always an 'interested party' with standing to be heard concerning all matters affecting the property."
The Appellate Division also determined that the trial court correctly considered plaintiffs' motive because "courts need not, and should not, ignore such facts," but found motive to be "ancillary" to its analysis of plaintiffs' standing in the matter.
This Court granted plaintiffs' petition for certification. 230 N.J. 500, 169 A.3d 987 (2017). We granted leave to appear as amicus curiae to the National Tax Lien Association, Inc. (NTLA).
II.
A.
Plaintiffs assert "the strong merit of their substantive case" and ask this Court to reverse and remand the matter.
They maintain that Linden 587, as the holder of tax sale certificates and as plaintiff in the foreclosure proceedings upon the Neighboring Property, has standing as an "interested party" pursuant to N.J.S.A. 40:55D-4"because its right to acquire or use the [Neighboring Property] has been destroyed by the Board's approval of the Goodman plan."
**413 Plaintiffs also claim that the Appellate Division analyzed legally irrelevant factors in determining standing. First, it was inappropriate to consider the fact that Linden 587 was not assigned the tax sale certificates until after the Board hearing because, as "a Cherokee-related affiliate," "Linden 587 stood in the shoes of its assignor for all intents and purposes." Second, plaintiffs contend that it was irrelevant that Linden 587 "had not obtained or sought final judgment of tax foreclosure." Lastly, plaintiffs assert that motive "is irrelevant to the real and justiciable issues that are presented to this Court" -- whether Linden 587 had standing to contest the Board's approval.
B.
Defendants LPH, Goodman, and the Board urge this Court to affirm the Appellate Division's determination that Linden 587 lacks standing. They claim support for their argument in the MLUL's requirement that notice of a public hearing need only be given to "the owners of all real property as shown on the current tax duplicates, located in the State and within 200 feet in all directions of the property." N.J.S.A. 40:55D-12(b). Defendants assert that the statutory notice requirement bears upon who qualifies as an "interested party" to challenge a planning board's action.
Defendants contend that standing must be considered on a case-by-case basis and agree with the Appellate Division that Linden 587 is not an "interested party" under the MLUL because it does not hold title to or a possessory interest in the Neighboring Property. Defendants note that the Board's approval of the Goodman project *603 may change Linden 587's desire to acquire the Neighboring Property, but stress that its "right to acquire" is unaffected.
C.
Aligning with plaintiffs, amicus curiae NTLA "submits that New Jersey's traditionally liberal view of standing should apply to **414 permit a tax lienholder's concerns to be heard." The NTLA contends that, in rendering their decisions, "the lower courts were unaware of all of the rights held by a tax lienholder and[ ] improperly entertained factors such as 'motive' to assess standing."
The NTLA avers that the trial court and Appellate Division overlooked that Linden 587 has the "right to pay or redeem subsequent municipal liens, and 'most importantly, the right to acquire title by foreclosing the equity of redemption of all outstanding interests, including the owner's.' " (quoting Caput Mortuum, L.L.C. v. S & S Crown Servs., Ltd., 366 N.J. Super. 323, 336, 841 A.2d 430 (App. Div. 2004) ). In addition to those rights, the NTLA contends that the Legislature granted tax lienholders the right "to enter onto a property to address conditions that endanger the health, safety and welfare of the public, as well as to add the costs of repair to the amount to redeem, and even to foreclose immediately or in rem." (citing N.J.S.A. 54:5-86(b), (c), and (d) ). Accordingly, the NTLA concludes that "a tax lienholder [has] a possessory right, albeit limited, in a property."
III.
As indicated above, the procedural posture and inconclusive record of this case confine our inquiry to a narrow legal question -- whether a tax lienholder has standing to challenge a land use application for a neighboring property. The answer to that question will determine whether plaintiffs' complaint was properly dismissed for lack of standing.
Whether a party has standing to pursue a claim is a question of law subject to de novo review. People For Open Gov't v. Roberts, 397 N.J. Super. 502, 508, 938 A.2d 158 (App. Div. 2008) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ("The issue of standing is a matter of law as to which we exercise de novo review.")). We therefore accord no "special deference" to the "trial court's interpretation of the law and the legal consequences that flow from **415 established facts." Manalapan Realty, 140 N.J. at 378, 658 A.2d 1230.
IV.
A.
Under the Tax Sale Law, "a municipality that is owed real estate taxes [receives] 'a continuous lien on the land' for the delinquent amount as well as for 'all subsequent taxes, interest, penalties and costs of collection.' " In re Princeton Office Park, L.P. v. Plymouth Park Tax Servs., LLC, 218 N.J. 52, 61-62, 93 A.3d 332 (2014) (quoting Simon v. Cronecker, 189 N.J. 304, 318, 915 A.2d 489 (2007) ). "[T]he municipality may enforce the lien by selling the property as prescribed by [ N.J.S.A. 54:5-19 ]." Varsolona v. Breen Capital Servs. Corp., 180 N.J. 605, 617, 853 A.2d 865 (2004) (quoting Savage v. Weissman, 355 N.J. Super. 429, 436, 810 A.2d 1077 (App. Div. 2002) ).
The Tax Sale Law sets forth the procedure by which tax sale certificates are generated, purchased, and sold. The certificate ... verifies "the taxes, assessments or other municipal liens or charges, levied or assessed against the property described in the application" as *604 of the certificate's effective date. After providing notice to the public and the property owner as required by N.J.S.A. 54:5-26 and -27, the municipality may sell the certificate at a public auction.
[ Princeton Office Park, 218 N.J. at 62, 93 A.3d 332 (footnote omitted) (quoting N.J.S.A. 54:5-12 ).]
In this way, the sale of tax certificates allows a municipality to "transform a non-performing asset into cash without raising taxes." Ibid. (quoting Varsolona, 180 N.J. at 610, 853 A.2d 865 ).
However, "[t]he holder of a tax sale certificate does not have title to the land. The holder's purchase of the certificate at a tax sale does not divest the delinquent owner of his title to the land." Township of Jefferson, 228 N.J. Super. at 4, 548 A.2d 521. "Instead, the sale operates as 'a conditional conveyance of the property to the purchaser, subject to a person with an interest in the property having the right to redeem the certificate, as prescribed by statute.' " Princeton Office Park, 218 N.J. at 63, 93 A.3d 332 (quoting Simon, 189 N.J. at 318, 915 A.2d 489 ). "The purchaser **416 of a tax sale certificate thus acquires a lien formerly held by the municipality's taxing authority, derived from the property owner's obligation to pay real estate taxes." Id. at 67, 93 A.3d 332. The lien purchaser obtains an
inchoate interest [that] consists of three rights: the right to receive the sum paid for the certificate with interest at the redemption rate for which the property was sold; the right to redeem from the holder a subsequently issued tax sale certificate; and the right to acquire title by foreclosing the equity of redemption of all outstanding interests, including that of the property owner.
[ Id. at 63, 93 A.3d 332 (alteration in original) (emphasis added) (quoting Varsolona, 180 N.J. at 618, 853 A.2d 865 ).]
The tax sale certificate holder's "right to acquire title by foreclosure is asserted in the Superior Court, which may enter [a] final judgment." Ibid."[B]y virtue of foreclosure, the purchaser of the tax sale certificate may become 'the owner of the property in fee simple.' " Id. at 63-64, 93 A.3d 332 (quoting Simon, 189 N.J. at 318, 915 A.2d 489 ). The "right to acquire title" is therefore significant in resolving standing under the MLUL.
Indeed, the MLUL explains standing as follows: "[a]ny interested party may appeal to the governing body any final decision of a board of adjustment approving an application for development." N.J.S.A. 40:55D-17(a). Under N.J.S.A. 40:55D-4, an "[i]nterested party" includes anyone with a "right to use, acquire, or enjoy property" "affected" by a land use application. In whole, an "interested party" is defined as:
any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under [this act], or whose rights to use, acquire, or enjoy property under [this act], or under any other law of this State or of the United States have been denied, violated or infringed by an action or a failure to act under [this act].
[ N.J.S.A. 40:55D-4 (emphases added).]
"New Jersey's courts have long taken a liberal approach to standing in zoning cases and ... [thus] have broadly construed the MLUL's definition of 'interested party.' " DePetro v. Twp. of Wayne Planning Bd., 367 N.J. Super. 161, 172, 842 A.2d 266 (App. Div. 2004). Nevertheless, standing requires that, in addition to establishing its "right to use, acquire, or enjoy property," a party **417 must establish that that right "is or may be affected." N.J.S.A. 40:55D-4. *605 B.
In this appeal, the trial court found that only a party with an "ownership or possessory interest" could have standing to maintain an action challenging a municipal planning board's approval. The trial court dismissed plaintiffs' complaint, finding that "the holder of a tax sale certificate cannot be deemed an 'interested party' " without an "ownership or possessory interest," which did not exist here. We disagree and conclude that a tax lienholder may have standing to challenge a planning board's actions.
Although a tax lienholder does not have title to the subject property, Township of Jefferson, 228 N.J. Super. at 4, 548 A.2d 521, and has, at best, a limited possessory interest in it pursuant to N.J.S.A. 54:5-86 (c),[9] the absence of title or possession is not determinative of standing. Indeed, the MLUL clearly and unambiguously provides that standing may be afforded to those with a "right to use, acquire, or enjoy property." N.J.S.A. 40:55D-4. The purchaser of the tax sale certificate has the "right to acquire title" to the property, Princeton Office Park, 218 N.J. at 63, 93 A.3d 332, and "the right to use" the property in a limited manner "in order to make repairs, or abate, remove or correct any **418 condition harmful to the public health, safety and welfare, or any condition that is materially reducing the value of the property," N.J.S.A. 54:5-86(c). We therefore find that the trial court erred in dismissing the complaint based on its legal conclusion that holders of tax sale certificates who have not foreclosed upon the subject property cannot have standing.
C.
That conclusion, however, is not in and of itself determinative of standing: to have standing pursuant to the MLUL, a tax lienholder must show that its "right to use, acquire, or enjoy property is or may be affected" by the action. N.J.S.A. 40:55D-4. Therefore, not every tax lienholder has standing to challenge a land use application. We thus agree with defendants that standing must be considered on a case-by-case basis.
In this case, plaintiffs have alleged principally that the proposed project would eliminate certain points of access to the Neighboring Property, interfere with an existing easement on the Property, and substantially modify storm water management on the Property. Those representations -- which defendants have not contested -- suggest that plaintiffs' limited present possessory interest in the Neighboring Property pursuant to N.J.S.A. 54:5-86(c) -- the right to enter onto the property to address certain conditions -- may be affected by the elimination of certain points of access to the Neighboring Property, the interference with an existing easement on the Property, and the modification *606 of storm water management on the Property.
Linden 587 therefore may have standing as the holder of tax sale certificates for the Neighboring Property whose "right to use ... [the] property ... may be affected" if the application is granted. See Black's Law Dictionary 1541 (6th ed. 1990) (defining "use," in pertinent part, as "[t]o make use of; to convert one's service; to employ; to avail oneself of"). Consequently, we determine that the trial court erred in dismissing plaintiffs' complaint for lack of standing.
**419 D.
We add the following guidance. It is true that the MLUL requires notice of a public hearing only to "the owners of all real property as shown on the current tax duplicates, located in the State and within 200 feet in all directions of the property." N.J.S.A. 40:55D-12(b). However, we reject defendants' assertion that the MLUL's statutory notice requirement bears upon who qualifies as an "interested party" to challenge a planning board's action. If the Legislature had intended for only parties required to be notified to have standing, it would have said so and restricted the standing requirements accordingly. Instead, the Legislature allows any "interested party" to appeal a board action, which is discrete from a noticed party under the MLUL. Standing does not depend upon ownership or proximity, but rather on meeting the definition of an "interested party."
In addition, Linden 587's motive in obtaining the tax sale certificates and challenging the Board's decision is not pertinent to our determination here of standing under the MLUL.[10] Plaintiffs have sufficiently alleged that their "right to use, acquire, or enjoy [the neighboring] property ... may be affected" to establish standing.
Nor is it conclusive that Linden 587 was assigned the tax sale certificates after the Board hearing; the date of acquisition is not determinative of a party's standing. See Domanske v. Rapid-Am. Corp., 330 N.J. Super. 241, 248, 749 A.2d 399 (App. Div. 2000) (observing that successor in interest "retains the same rights as the original owner, with no change in substance" (quoting Black's Law Dictionary 1445 (7th ed. 1999)).
**420 Finally, we stress once more that we make no findings regarding Linden 587's acquisition of the tax sale certificates; whether Cherokee did, in fact, hold title to the Neighboring Property; the relationship among Cherokee, Equities, and Linden 587; whether the Neighboring Property was "abandoned" under N.J.S.A. 55:19-81, thus providing plaintiffs with a limited possessory interest under N.J.S.A. 54:5-86(c) ; the extent to which plaintiffs' "right ... to acquire" or limited possessory interest in the Neighboring Property "may be affected"; or the merits of plaintiffs' objections in general. The record is lacking on these matters and, to the extent they are relevant, they should be considered and a record developed on remand.
V.
For the reasons set forth above, we reverse the Appellate Division's judgment *607 and remand to the trial court for further proceedings consistent with this opinion.
JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA join in JUSTICE SOLOMON's opinion. JUSTICE TIMPONE filed a dissent, in which CHIEF JUSTICE RABNER joins.

Plaintiffs claim before this Court that Cherokee, rather than Equities, transferred the tax liens to Linden 587. They further contend that Cherokee was the party that foreclosed upon the Neighboring Property. However, the record indicates that Equities was the entity that purchased the tax liens from the City of Linden and transferred them to Linden 587. Additionally, Equities is named as the original plaintiff in the foreclosure proceedings. We make no findings regarding Linden 587's acquisition of the tax sale certificates.

During oral argument, counsel for plaintiffs represented that one tax lien had been foreclosed upon but not the remaining two.

In their complaint, plaintiffs asserted that they "appeared through counsel to oppose the application of Goodman" at the public hearing held in June 2014. In oral argument before this Court, plaintiffs appeared to suggest -- and defendants to dispute -- that the attorney for Cherokee also represented the entity that held the tax certificates. The record is undeveloped on this point, and the Court makes no findings as to whether counsel for Cherokee appeared at the Board hearing on behalf of Equities and/or Linden 587.

In its resolution, the Board noted that Goodman agreed to construct a thirty-five-foot roadway to allow access to the Neighboring Property.

At oral argument, plaintiffs represented that the email should never have been included in the record under the rules of evidence that preclude consideration of settlement offers. The record is undeveloped on this point, and the Court makes no findings as to the admission of the email.

The record is not conclusive as to the relationship among Cherokee, Equities, and Linden 587, and the Court makes no findings on that subject.

Plaintiffs do not challenge the Appellate Division's conclusion that Cherokee was not the titled owner of the Neighboring Property. Because the issue of Cherokee's standing is not before this Court, our discussion of the Appellate Division's judgment is limited to Linden 587's standing. We make no findings as to whether Cherokee did, in fact, hold title to the Neighboring Property.

The Appellate Division opinion indicates that Linden 587 did not acquire the tax liens until after the Board hearing.

N.J.S.A. 54:5-86 allows tax certificate holders to access an "abandoned property." Specifically, subsection (c) states:
Any person holding a tax sale certificate on a property that meets the definition of abandoned property as set forth in L. 2003, c. 210 ([N.J.S.A.] 55:19-78 et al.), either at the time of the tax sale or thereafter, may enter upon that property at any time after written notice to the owner by certified mail return receipt requested in order to make repairs, or abate, remove or correct any condition harmful to the public health, safety and welfare, or any condition that is materially reducing the value of the property.
[N.J.S.A. 54:5-86(c).]
The record reveals that the Neighboring Property was previously abandoned. However, the record does not reveal whether the Neighboring Property satisfies the requirements for "abandonment" under N.J.S.A. 55:19-81.

In their briefing, plaintiffs contend that in Bron v. Weintraub, 42 N.J. 87, 91, 199 A.2d 625 (1964), this Court issued a "commandment ... that courts not express hostility towards certificate-holders." However, Bron does not conclude that motive is irrelevant. Because motive is not relevant under the facts before us, we decline to determine whether and under what circumstances it might be relevant.