**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2919-22

TANIA BARONE,

     Plaintiff-Appellant,

v.

AAA INSURANCE and/or
CSAA GENERAL INSURANCE
COMPANY and A PLUS
CONTENTS, INC.,

     Defendants-Respondents.

_____

Argued September 16, 2024 – Decided January 8, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0528-20.

Peter A. Ouda argued the cause for the appellant.

C. Scott Rybny argued the cause for respondent CSAA General Insurance (Morgan, Akins & Jackson PLLC, attorneys; C. Scott Rybny, of counsel and on the brief).

Thomas A. Whelihan argued the cause for respondent A Plus Contents Services Inc. (The Whelihan Law Firm LLC, attorneys; Thomas A. Whelihan, on the brief).

PER CURIAM

After a burst pipe caused flooding in plaintiff's unit within a multi-unit property, she filed suit against: (1) CSAA General Insurance Company, her homeowner's insurance carrier, seeking compensation for damaged personal property and personal injuries; and (2) A Plus Contents Services, an entity CSAA retained to complete site inspections and personal property inventory, seeking compensation for damaging or failing to return some personal property. Plaintiff appeals the motion court's orders: (1) granting defendants' summary judgment dismissal of her complaint; (2) denying her motion for reconsideration of the summary judgment orders; and (3) granting CSAA's summary judgment motion for its counterclaims totaling $55,925.99, representing forfeiture of her paid claims and not just those "based on her individual misrepresentations."

We affirm the orders granting summary judgment and denying reconsideration because the court applied the correct legal principles. However, we reverse and remand the court's order granting summary judgment to CSAA for its counterclaims because the court failed to comply with Rules 1:7-4 and

2

A-2919-22

4:46-2(c) by not setting forth its own factual conclusions and legal analysis but merely "adopted" those set forth in CSAA's moving papers.

I.

Plaintiff owns and occupies the lower unit of a multi-unit property in Jersey City. The freshwater line connected to plaintiff's hot water heater burst, flooding her unit and causing water damage to the property and her personal items. After filing a claim with CSAA, plaintiff was upset about the claims paid by CSAA, so she filed a complaint with the New Jersey Department of Banking and Insurance Consumer Inquiry and Response Center. She asserted CSAA refused to pay her "alternative living expenses" and she was "[b]ecoming ill [] [from the] mold [] developing in" the property.

In the meantime, CSAA retained A Plus to inspect the property and inventory the allegedly damaged personal items. During its inventory, A Plus, at no cost to plaintiff, arranged to take some of her water-damaged clothing to the cleaners. CSAA paid plaintiff $53,330.34, including $14,694.20 for reimbursement of dwelling damages, $14,664 for personal property damage, and $17,112.39 for "alternative living expenses" as a result of her alleged exposure to "dust and mold . . . which made her sick and unable to work . . . ."

Plaintiff believed CSAA shortchanged her coverage demands and filed a four-count complaint against the carrier asserting: breach of her homeowner's insurance policy by "refus[ing] to reimburse and/or compensate" her for damaged personal property; failure to provide compensation for the damaged personal items, which "constitute[d] a bad faith refusal to pay a valid claim"; entitlement to reimbursement for the "alternative housing" and personal injuries damages she incurred as a result of the insurer's failure "to provide . . . alternative housing in accordance with the terms of the policy"; and its failure to relocate her after the incident "was wantonly reckless and/or malicious and constituted bad faith." Plaintiff later amended her complaint to add A Plus as a defendant, claiming it "negligently, recklessly and/or carelessly caused damage to [her] property" and "breached its contract [with] [her] to restore her property."

During discovery, CSAA came to believe that plaintiff's claims were not factually supported and were, in fact, fraudulent. The motion court granted CSAA leave to amend its answer to assert a counterclaim against plaintiff for violating her insurance policy's fraud and concealment provision. Under the provision, insurance coverage is not provided for "[k]nowingly and willfully conceal[ing] or misrepresent[ing] any material fact," "[e]ngag[ing] in fraudulent conduct," or "[m]a[king] false statements." CSAA also asserted counterclaims

A-2919-22

for: declaratory judgment; unjust enrichment; breach of contract and the implied covenant of good faith and fair dealing. It also asserted an affirmative defense of unclean hands.

At the completion of discovery, CSAA and A Plus filed respective motions for summary judgment.[1] Arguments on the motions were held back-to-back, and after reserving decision, the court issued separate orders granting both motions and dismissing plaintiff's complaint with prejudice because she failed to cite the record to support her material facts opposing summary judgment as required by Rule 4:46-2(b).

## II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We "accord no 'special deference' to the 'trial

---

[1] Plaintiff's complaint against CSAA was dismissed without prejudice due to her failure to provide discovery. The complaint was reinstated after plaintiff complied.

court's interpretation of the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414-15 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A non-moving party "cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Brill, 142 N.J. at 529. Thus, "once the moving party presents sufficient evidence in support of the motion, the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists[.]'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (alteration in original) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)).

Rule 4:46-2 defines the requisite procedure for presenting the alleged undisputed facts upon which a motion for summary judgment is founded, as well as the competent evidence supporting each of the proffered facts. The rule mandates that a motion for summary judgment be supported by a statement of material facts that "cit[es] to the portion of the motion record establishing [each] fact or demonstrating that [each fact] is uncontroverted." R. 4:46-2(a). "[A] party opposing a motion for summary judgment [must] 'file a responding statement either admitting or disputing each of the facts in the movant's

statement.'" Claypotch v. Heller, Inc., 360 N.J. Super. 472, 488 (App. Div. 2003) (quoting R. 4:46-2(b)). Indeed, "if the party opposing [a] summary judgment motion 'offers . . . only facts which are immaterial or of an insubstantial nature, a mere scintilla, fanciful, frivolous, gauzy or merely suspicious, [they] will not be heard to complain if the court grants summary judgment.'" Igdalev, 225 N.J. at 480 (quoting Brill, 142 N.J. at 529) (alterations in original). "[A]ll material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact." R. 4:46-2(b).

A court's review of the summary judgment record must limit its consideration of the undisputed facts to those properly presented in accordance with Rule 4:46-2. See Lombardi v. Masso, 207 N.J. 517, 549 (2011) (Rivera-Soto, J., dissenting) (stating a trial court must decide a summary judgment motion "[b]ased on the Rule-defined, specifically tailored summary judgment record before it").

III.

Before us, plaintiff contends the motion court erred in failing to recognize that her opposition to summary judgment set forth disputed material facts and improperly made credibility determinations in dismissing her complaint. Parks v. Rogers, 176 N.J. 491, 502 (2003). As for CSAA's claims of plaintiff's fraud and unclean hands, plaintiff argues the court incorrectly determined her state of mind, an issue in dispute. And as for her claims against A Plus, plaintiff argues her "contract claim should have survived summary judgment" because A Plus "assumed certain duties to her."

We are unpersuaded by plaintiff's arguments. The motion court properly dismissed plaintiff's complaint. First, the court properly admitted defendants' statements of material facts as unopposed because plaintiff did not demonstrate any genuine issues of material fact in opposing defendants' summary judgment motions. R. 4:46-2(b). Second, defendants established they were entitled to relief as a matter of law. We examine the specifics of each motion.

1. CSAA's Summary Judgment Motion

CSAA moved for summary judgment dismissal on the basis that plaintiff misrepresented her insurance claims for: (1) alternative living expenses, resulting from alleged personal injuries sustained due to mold; and (2) personal

property expenses for the personal items purportedly damaged as a result of the incident.

As for the alternative living expenses, CSAA asserted the "[m]edical documentation provided by [p]laintiff showed . . . [she] lied about her exposure to mold" since the Lab Corp results were "negative for mold exposure." In her opposing statement of material facts, plaintiff cites to her certification wherein she denied her mold allegations were false. Plaintiff certified: "I have letters from two medical professionals showing that I got ill. I was getting tested in the hospital and was told I cannot be living in that unsafe environment. These letters from a physician directly made to CSAA were ignored." However, the physician's letters are not in the motion record; she also did not supplement the record by providing a copy of them. Thus, CSAA's assertion, as held by the motion court, is supported by the motion record.

Regarding plaintiff's inability to work post-incident, CSAA relied on the "[m]odeling records . . . [plaintiff] produced [to] demonstrate that [she] did in fact have various modeling jobs for which she received compensation from January 19, 2019 through December 27, 2022." Thus, the record undermines plaintiff's assertion she was unable to work due to the flooding. Plaintiff's opposing statement of facts admits that she worked throughout this period,

9

except during "the mitigation process," and her certification merely restates her admission verbatim.  Yet, plaintiff fails to indicate exactly when the mitigation period occurred.  Thus, the court was correct in ruling the record shows that plaintiff misrepresented her employment availability due to the flooding.

Concerning CSAA's assertion that plaintiff misrepresented her ownership and valuation of a U2 iPod, CSAA pointed out that "U2 [s]pecial [e]dition iPods are red with signatures of the band members on the back" and that neither of the iPods depicted in the record have the unique features of a U2 iPod or have the correct U2 iPod serial numbers.  Plaintiff certified:

> The [iP]od that I keep referring to was a brand new (in the package) U2 special edition [iPod] that I purchased nearly two decades ago.  I was told by my attorney to look up the [v]alues of my personal belongings, which I did on [eB]ay and that was the amount that I saw it being sold for[,] which I screenshot[ed].  I was not able to create a full list of the thousands of  items  that  took . . . my entire lifetime to acquire.

The record supports CSAA's assertion, including plaintiff's own discovery responses.  The photos of the two iPods she submitted in response to her interrogatories, inventory of personal items by A Plus, and another business only provide values for two iPods—neither include a U2 special edition iPod.  Furthermore, plaintiff initially deposed that one of the iPods in the interrogatory photos she provided was the U2 iPod.  However, a few moments later she

10

conceded that the iPod in the photo did not have the features of a U2 iPod. After making this concession, she averred more than two iPods were damaged and she was no longer sure whether the one in the picture was a U2 iPod. Based on her concession, plaintiff knowingly misrepresented her ownership and the valuation of her damaged iPod(s) as a U2 Special edition.

Finally, as for plaintiff's claims about damage to her oriental rugs, CSAA asserted plaintiff misrepresented herself as an oriental rug expert. CSAA cites to plaintiff's representations in her June 18, 2019 email to CSAA that her family owned a textile factory and her deposition testimony where she later stated she was not alive when her family owned the textile factory. Her certification states her "rugs were damaged[,] . . . [and that she] never portrayed herself as a rug expert." Instead, she indicated that she "grew up around [these] items and . . . [has] knowledge of quality rugs[,] . . . [and that] the rugs in question were in [her] unit at the time of the flood."

Plaintiff's opposition to the motion does not cite to any competent evidence to dispute this fact, and the record—particularly, CSAA's rug expert's uncontroverted opinion—sufficiently proves plaintiff misrepresented the condition of her rugs, specifically, that they did not have any pet stains or sun damage prior to the flood. Thus, the court correctly determined there exists no

11

genuine issue of material fact as to whether plaintiff misrepresented the damage to her rugs.

Because plaintiff's opposition to CSAA's motion did not satisfy Rule 4:46-2(b), we must "limit our consideration . . . [of whether the judge's grant of CSAA motion was proper] to the motion record that existed when the orders were entered." Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 208 (App. Div. 2014). Even viewing the record in the light most favorable to plaintiff, the non-moving party, R. 4:46-2(c), summary judgment was properly granted to CSAA because there were no genuine issues of material facts and there was no legal support for plaintiff's claims. CSAA was not obligated to cover plaintiff's claims that were "wil[l]fully misrepresented" or false "even if [plaintiff] did not harbor such an intent." Longobardi v. Chubb Ins., Co., 121 N.J. 530, 540 (1990).

2. A Plus' Summary Judgment Motion

A Plus moved for summary judgment on the basis that it did not have a contractual agreement with plaintiff and CSAA did not retain it to restore, repair, or clean plaintiff's garments nor did it do so. A Plus additionally maintains the garments it transported to the cleaners as a courtesy were already damaged as a result of the flooding.

Plaintiff opposed the motion, certifying: "I was told and instructed that A Plus was retained for inventory, repair and to restore my items. They did take many items of mine, including clothes that were never repaired or restored." She also attested tags on clothes had been removed and some were returned damaged.

Based on the summary judgment record, the court correctly held that because there was no contractual agreement between A Plus and plaintiff there was no viable breach of contract claim. See Pollack v. Quick Quality Rests, Inc., 452 N.J. Super. 174, 188 (App. Div. 2017) ("To establish a breach of contract claim, [the claimant] must prove: the parties entered into a contract." (citing Igdalev, 225 N.J. at 482)). The lack of a contractual agreement does not bar plaintiff's negligence claim. See Aronsohn v. Mandara, 98 N.J. 92, 105-06 (1984) (holding a contractor may be "responsible to third persons for . . . property damages proximately cause by . . . [their] failure to exercise [reasonable] care."). Yet, plaintiff's opposition failed to cite any competent evidence demonstrating A Plus "proximately caused damages to or the loss of her personal property," considering that water damage restoration and trash removal contractors hired by plaintiff were restoring and cleaning up the property before A Plus was contracted by CSAA. She makes bald hearsay

13

claims that A Plus is responsible for damages to "a fur hat," a sequined dress, and "a pair of leather pants" but proffers no evidence the damage was caused by A Plus' role in arranging dry cleaning services. Merely asserting A Plus damaged her items without proof is insufficient to avoid summary judgment.

3. Plaintiff's Reconsideration Motion

Plaintiff argues reconsideration of summary judgment dismissal of her complaint should have been granted because her opposition to dismissal was sufficient. We see it differently.

The motion court properly denied plaintiff's reconsideration motion because she "offered no new evidence, citations, or explanation with any tendency to show that the court's decision to grant summary judgment was palpably incorrect or irrational, or that the court failed to appreciate the significance of probative, competent evidence." Kornbleuth v. Westover, 241 N.J. 289, 308 (2020). Her motion merely repeated her conclusory statements regarding her alternative living expenses, personal property damages, and her breach of contract claim, as we noted above the court properly rejected.

4. CSAA's Counterclaims Motion

CSAA moved for summary judgment on its crossclaims asserting that, under the law of case doctrine, the court's findings for its summary judgment

14

dismissal order were dispositive that plaintiff knowingly and willingly submitted fraudulent insurance claims in breach of their insurance contract. In opposition, plaintiff repeated the statement of material facts she provided in her opposition to CSAA's summary judgment motion denying its contentions regarding: her ownership of a U2 iPod based on the serial numbers depicted in photos she submitted and her portrayal of herself as an oriental rug expert. Outside of these two contentions, her certification did not explicitly address the fraud allegation.

In granting CSAA's relief, the court's oral decision stated the motion was unopposed "on all counts," and adopted the "legal reasoning and the factual conclusions" detailed in the motion. This is insufficient.

Granting a motion as unopposed based on moving papers is an inadequate statement of reasons for summary judgment, even on an unopposed motion. Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 302 (App. Div. 2018). Under Rule 1:7-4(a), a "court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusion of law thereon . . . on every motion decided by a written order that is appealable as of right." The court is also obligated to set forth its "specific findings on summary judgment motions" as is "explicitly stated in [Rule] 4:46-2" and in Brill, 142 N.J. at 540. Est. of

Doerfler, 454 N.J. at 301; <u>see</u> <u>also</u> <u>R.</u> 4:46-2(c) ("The court shall find the facts and state its conclusions in accordance with <u>R.</u> 1:7-4.")

The motion court's "nebulous allusion to 'the reasons set forth in defendant['s] motion papers'" does not comply with the "unambiguous" requirements of <u>Rule</u> 1:7-4. <u>Est. of Doerfler</u>, 454 N.J. at 302. Therefore, we are constrained to reverse and remand the order granting summary judgment to CSAA, directing the court to issue a decision in accordance with <u>Rules</u> 1:7-4 and 4:46-4(b). Remand shall be completed within forty-five days of this decision.

To the extent that we have not addressed any of plaintiff's arguments, it is because they lack sufficient merit to be discussed in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2919-22