# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0217-24

IN THE MATTER OF
S.M., SR.,[1] an incapacitated
person.

_____

Argued September 16, 2025 – Decided September 30, 2025

Before Judges Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. P-000247-23.

Joel Kreizman argued the cause for appellant S.M., Sr. (Scarinci & Hollenbeck, LLC, attorneys; Joel Kreizman, on the briefs).

Michael J. Canning argued the cause for respondent John W. Callinan, Esq. (Giordano, Halleran & Ciesla, PC, attorneys; Michael J. Canning, of counsel and on the brief; Brian S. Schoepfer, on the brief).

PER CURIAM

---

[1] We use initials and a fictitious name to protect appellant's privacy interests. <u>R.</u> 1:38-11(b).

This appeal arises from the August 12, 2024 judgment of incapacity and appointment of a plenary guardian of the person and property of S.M., Sr. The initial dispute centers on whether an attorney, Joel Kreizman, Esq. (Kreizman), who filed this appeal but was not appointed counsel or guardian for S.M., Sr., has the authority to pursue it on S.M., Sr.'s behalf. Based on our de novo review of the record, we are satisfied that Kreizman lacks legal authority to pursue this appeal and we dismiss his appeal.

I.

S.M., Jr. filed a verified complaint and order to show cause for a protective arrangement for his father, S.M., Sr., based on alleged incapacity.[2] On August 2, 2023, the probate court issued the order to show cause, directing, in part, that any party of interest be served with the complaint. If the interested party wished to be heard, the order provided a deadline to file a response.

The order directed that a special guardian be appointed over S.M., Sr.'s financial matters and as a "HIPAA[3] representative with full access to all medical and psychiatric records." It also appointed a guardian ad litem (GAL)

---

[2] The record refers to a second application filed by a self-represented interested party, Katherine Keim (Keim), S.M., Sr.'s granddaughter also for a protective arrangement under a separate docket number P-394-23.

[3] HIPAA refers to the Health Insurance Portability and Accountability Act.

A-0217-24

for S.M., Sr. to evaluate whether the appointment of a permanent guardian was in his best interests.

In the October 3, 2023 order, the court appointed Lynn Staufenberg, Esq., as GAL. Further, the order reiterated that S.M., Sr. must submit to two independent medical evaluations arranged by the appointed GAL or special guardian to determine capacity. The court also appointed John G. Hoyle, III, Esq. as special guardian under N.J.S.A. 3B:12-4 to oversee the protective arrangement enumerated in the order.

Barbara Boyd, Esq. initially represented S.M., Sr. in this matter. As the probate court noted, she objected to the entry of the order to show cause.

On December 22, 2023, the probate court granted the application for a protective arrangement for S.M., Sr. Several months later, the court received, and reviewed in camera, the GAL's report, which included her investigation, findings and recommendations. The GAL, albeit reluctantly, recommended the appointment of a full guardian for S.M., Sr. over his person and property.

On April 18, 2024, the probate court conducted a case management conference. S.M., Sr.'s attorney Boyd was present along with S.M., Jr.'s attorney, the GAL, and special guardian. After hearing from all parties, the court determined that the verified complaint for a protective arrangement, order

3

to show cause, and the two doctor's certifications sufficed for a guardianship application to proceed without the need for a formal guardianship complaint to be filed. The probate court stated it would schedule a plenary hearing to determine whether S.M., Sr. was incapacitated and in need of a permanent guardian. No objection was raised to proceeding in this fashion.

Keim was present at this hearing and had filed a motion for reimbursement of legal fees paid on S.M., Sr.'s behalf since the filing of the guardianship complaint. Oral argument on Keim's motion was scheduled for the next day.[4]

A week prior to the scheduled trial date, Boyd was relieved as counsel for S.M., Sr. and Bonnie Wright, Esq. substituted as counsel. In a letter submitted to the court, Wright advised that "[S.M., Sr.] has retained me to represent him in connection with the above matter." Wright, acknowledging concerns the court may have regarding this "last minute" substitution, added, "my client has made it clear to me that this is how he wishes to proceed."

Before trial began, Wright orally moved to dismiss the action because of several procedural defects: (1) no guardianship complaint had been filed; (2) S.M., Sr. did not have the opportunity to file an answer; (3) S.M., Sr. was not

---

[4] A transcript of this hearing was not included in the appendix. However, it was attached to the motion for a stay filed in this matter.

A-0217-24

given the opportunity to elect a jury trial; and (4) S.M., Sr. and his counsel had not been provided with a copy of the GAL's report. Counsel argued that these alleged procedural defects warranted dismissal of the case, which the court denied. The court reasoned that S.M., Sr.'s prior counsel "not only was on notice but acquiesced to this process . . . ."

A one-day trial took place on July 9, 2024, with S.M., Sr. testifying first. He claimed he was forty years old and was born in 1933. Although S.M., Sr. knew he was in a courtroom, he "thought he was in Florida" and that it was presently November. S.M., Sr. was unable to identify his assets generally, but testified he owned a house which "the bank 'took [] back.'" Regarding his attorney, he stated "they" fired his prior lawyer but was unable to provide the attorney's name. At the close of the case, the probate court found S.M., Sr. "was not oriented to date, time, or place."

Four medical doctors testified at trial. The movant, S.M., Jr., called Dr. Pass, an expert in the field of geriatric and internal medicine, and Dr. Ngu, an expert in the field of psychiatry. Wright, on behalf of S.M., Sr., called Dr. Rosengarten, S.M., Sr.'s treating physician for several years, and Dr. Ronald Ryder, D.O., S.M., Sr.'s treating cardiologist.

A-0217-24

In its decision, the probate court concluded that, of the four physicians who testified, only Dr. Pass's opinions were supported by clear and convincing evidence and by "objective findings and conclusions." The court found that Dr. Pass conducted a comprehensive capacity assessment of S.M., Sr., which included his interview with and physical exam of S.M., Sr. and several standardized tests designed to assess capacity. The court credited Dr. Pass's conclusion that S.M., Sr. was "not capable of managing his own affairs" and was in need of a guardian of his person and property.

As the probate court noted, "[t]he only other physician trained on issues of cognitive impairment was Dr. Ngu," who also evaluated S.M., Sr. and testified as an expert in the field of psychiatry. Although her opinion was limited in scope, Dr. Ngu testified that S.M., Sr. lacked capacity to make a decision regarding transferring to a rehabilitation facility. On cross examination, Dr. Ngu acknowledged that she had not completed a general capacity assessment of S.M., Sr. and could not opine more broadly on S.M., Sr.'s general medical capacity.

Dr. Rosengarten, a specialist in internal medicine and pediatrics, had been treating S.M., Sr. for over thirteen years and concluded that he has "age-related memory loss" but is not "incapacitated." This opinion was documented in a "one page, one line opinion dated December 15, 2023."

A-0217-24

Then, three days later, Dr Rosengarten without explanation decided to conduct a "mini mental examination" of S.M., Sr. Although Dr. Rosengarten found S.M., Sr. "oriented as to date, time and place [and] to himself," he acknowledged that he "would benefit from assistance with his medical care." The probate court concluded that Dr. Rosengarten's testimony "was not remotely credible," and "discounted [his] opinions as nothing more than net opinions."

Although the court found Dr. Ryder more credible, his testimony "was not particularly helpful to the court" because his opinions were based on subjective anecdotal evidence and not based on objective criteria. The court noted, however, that Dr. Ryder did acknowledge S.M., Sr.'s testimony in court concerning.

After the movant's two medical professionals testified, S.M., Sr.'s counsel renewed her motion to dismiss the case based on the lack of two medical professionals testifying regarding S.M., Sr.'s capacity. The court denied the application.

On August 9, 2024, the probate court rendered an oral decision, finding clear and convincing evidence that S.M., Sr. lacked capacity and was "unfit and unable to govern himself or to manage his affairs in all areas." In particular, the court noted that S.M., Sr. "demonstrated susceptibility to influence by others,"

7

and described how on the eve of trial, S.M., Sr. had a change of attorneys.  The

court stated:

> It begged the question, who made the decision to fire
> and hire S.M., Sr.'s attorney.  And it further begged the
> question, what other legal decisions were being made
> by who?

Consistent with S.M., Sr.'s best interests, the probate court appointed a

plenary guardian over his person and property.  The court recognized "normal

practice" provides for the appointment of a family member as guardian of the

incapacitated person.  However, in this case, the probate court concluded that

doing so would "invite more rancor, more ill will among family members."

Thus, the court appointed an experienced attorney, John Callinan, Esq., as

guardian for S.M., Sr.

After the court issued its decision, John Kreizman, Esq. filed an

application for a stay of the August 12, 2024 judgment of incapacity and

appointment of John Callihan, Esq., guardian of the person and estate of S.M.,

Sr.  The emergent application was addressed by the same judge who was

handling a separate matter in the General Equity Part involving the estate of

S.M., Sr.'s deceased wife, R.M.  (estate case).

Before the application for a stay was resolved, the General Equity Part

heard the estate case and directed Kreizman to provide "proof of retention and

authorization" from S.M., Sr.'s appointed guardian. It is undisputed that Kreizman did not provide the proof required. As a result, on October 4, 2024, the court denied Kreizman's emergent application for a stay and granted S.M., Jr.'s application to disqualify Kreizman.

Shortly thereafter, Kreizman filed a motion for a stay of the August 12, 2024 judgment with this court. On November 18, 2024, we denied the motion for a stay, noting the "dispute concerning whether the attorney who filed this motion ha[d] authority to represent the appellant, who has now been declared an incapacitated person." This appeal followed.

II.

Standing is a "threshold justiciability requirement." Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 424 (1991). "Addressing the standing inquiry" at the outset of a case is "crucial because the answer determines whether the court has 'power to hear the case.'" Cherokee LCP Land, LLC v. City of Linden Planning Bd., 234 N.J. 403, 430 (2018) (citing Watkins, 124 N.J. at 418). "A litigant has standing only if the litigant demonstrates 'a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm in the event of an unfavorable decision.'" Id. at 423 (quoting Jen Elec., Inc. v. County of Essex, 187 N.J. 627, 645 (2009)).

A-0217-24

"[A] lack of standing . . . precludes a court from entertaining any of the substantive issues for determination."  EnviroFinance Grp. v. Env't Barrier Co., 440 N.J. Super. 325, 339 (App. Div. 2015).

Standing is a legal issue; therefore, our standard of review is de novo. New Jersey Dep't of Envtl. Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 291 (App. Div. 2018) (citing NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 444, (App. Div. 2011)).

Moreover, a lawyer's authority to act on behalf of a client and the scope of the representation originate from the attorney-client relationship.  See RPC 1.2.  "A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation."  Id. at 1.2(a).  However, where an adult has been adjudicated incapacitated and appointed a guardian of either the person or the property, the incapacitated person "shall be represented in an action by the [appointed] guardian . . . ."  R. 4:26-2(a).  The guardian, therefore, has the authority to act on behalf of the incapacitated person and authorize legal action.

Here, Kreizman contends the incapacity hearing in this matter failed to adhere to the procedural requirements of Rule 4:86 and the Supreme Court's ruling in S.T. v. 1515 Borad Street LLC, 241 N.J. 257 (2020).  On the issue of standing, Kreizman

asserts that S.M., Sr.'s family members should be deemed to have standing to appeal the court's incapacity ruling. Respondent, the appointed guardian of S.M., Sr., contends that Kreizman has no legal authority to pursue this appeal on behalf of S.M., Sr. To the extent we may consider Kreizman's substantive claims, respondent contends S.M., Sr. was afforded sufficient due process during the incapacity hearing in accord with Rule 4:86 and legal precedent. Because the record fails to support Kreizman's uncorroborated assertions regarding standing, we are not satisfied that he has demonstrated legal authority—thus standing—to pursue this appeal.

A.

We begin with the foundational question of standing. Before the court deemed S.M., Sr. incapacitated, he was represented throughout the litigation by competent counsel—first attorney Boyd and then attorney Wright. There is no dispute that both attorneys participated in the proceedings and pursued S.M., Sr.'s interests.

In his brief, Kreizman refers to himself as "co-counsel" with S.M., Sr.'s guardianship attorney, Wright. However, neither the record on appeal nor the transcripts of the hearings confirm Kreizman as "co-counsel" of record. Moreover, on August 9, 2024, the day the court issued its oral decision, it stated that all counsel of record were present, noting "I don't know why Mr. Kreizman is here, but he

11

appears to be here." Kreizman did not enter his appearance on the record or state that he was appearing as "co-counsel" with Wright.

Kreizman further asserts that Wright asked him to pursue an appeal on behalf of S.M., Sr. Again, there is no support for this assertion in the record, nor is there any substitution of counsel provided. He also argues that he has represented S.M., Sr. "for more than three years" presumably in other matters, and thus, he is authorized to proceed with this appeal. Kreizman offers no legal support for this assertion, particularly in light of S.M., Sr.'s adjudication of incapacity.

There is also no dispute that all interested parties, which included S.M., Sr.'s family members, were given adequate notice of the guardianship hearing pursuant to Rule 4:86-4(a)(2). At the case management hearing on April 18, 2024, during which Keim was present, the court stated that a formal adjudicatory hearing would be held at which time any interested party may present evidence to counter the evidence of incapacity. Thus, all parties were given an opportunity to present evidence and argue their respective positions regarding S.M., Sr.'s alleged incapacity.

B.

After the court adjudicated S.M., Sr. incapacitated and appointed a guardian for him, under Rule 4:26-2(a), the guardian "shall" represent S.M., Sr.

in any action. Here, the guardian has unequivocally stated that it is not in S.M., Sr.'s interests to pursue this appeal and he has not authorized Kreizman to do so.

Rule 4:26-2(a) provides recourse if a conflict develops between the guardian and the adjudicated incapacitated person. The Rule provides for the appointment of a guardian ad litem in accordance with paragraph (b) of the Rule to investigate the alleged conflict and make recommendations to the court as to how to proceed. Following the appointment of the guardian for S.M., Sr., no such application was made before the probate court.

Additionally, Rule 4:86-7(c) allows:

> . . . an interested person on the incapacitated person's behalf . . . [to] seek review of a guardian's conduct and/or review of a guardianship by filing a motion setting forth the basis for the relief requested.

Here, no such motion by Kreizman or any other interested party was filed in the probate court. Therefore, following the appointment of a guardian, Rule 4:86-7 provides interested parties, such as S.M., Sr.'s family members, a procedural avenue to seek review of the guardian's conduct or the guardianship order. No procedural barrier prevented the family members from pursuing an appeal directly and challenging the procedures that led to the appointment of a guardian. Accordingly, Kreizman has not established standing to pursue this appeal.

Because Kreizman lacks standing to pursue this appeal, we need not reach the merits of his due process challenges to the guardianship proceeding.  See R. 2:8-2 (dismissal under this Rule is "not intended to constitute an adjudication on the merits but only . . . on procedural or jurisdictional grounds").

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0217-24